1  **GOLDEN GOODRICH LLP**
   Jeffrey I. Golden, State Bar No. 133040
2  jgolden@go2.law
   Ryan W. Beall, State Bar No. 313774
3  rbeall@go2.law
   3070 Bristol Street, Suite 640
4  Costa Mesa, California 92626
   Telephone    714-966-1000
5  Facsimile    714-966-1002

6  Attorneys for Chapter 7 Trustee
   Weneta M.A. Kosmala

7

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10  In re                                    Case No. 8:23-bk-11139-TA

11  STACY ODINE CORBAN,                      Chapter 7

12            Debtor.                        **CHAPTER 7 TRUSTEE'S MOTION FOR
                                             ORDER:**
13                                           **(1)  AUTHORIZING SALE OF REAL
                                                  PROPERTY FREE AND CLEAR OF
14                                                LIENS, CLAIMS, AND INTERESTS
                                                  PURSUANT TO 11 U.S.C. §§ 363(b)
15                                                AND (f);**
                                             **(2)  APPROVING OVERBID PROCEDURES;**
16                                           **(3)  APPROVING BUYER, SUCCESSFUL
                                                  BIDDER, AND BACK-UP BIDDER AS
17                                                GOOD-FAITH PURCHASER
                                                  PURSUANT TO 11 U.S.C. § 363(m);
18                                                AND**
                                             **(4)  AUTHORIZING PAYMENT OF
19                                                UNDISPUTED LIENS, REAL ESTATE
                                                  BROKER'S COMMISSIONS AND
20                                                OTHER ORDINARY COSTS OF SALE;**
                                             **MEMORANDUM OF POINTS AND
21                                           AUTHORITIES; DECLARATIONS OF
                                             WENETA M.A. KOSMALA, CLARENCE
22                                           YOSHIKANE AND GEORGE BARR IN
                                             SUPPORT**
23
                                             **[22596 Killy Street, Lake Forest, California
24                                           92630, APN 614-202-48]**

25                                           **DATE:      July 9, 2024
                                             TIME:      11:00 a.m.**
26                                           **PLACE:    Courtroom 5B/Via ZoomGov
                                                        411 West Fourth Street
27                                                      Santa Ana, California 92701**

28

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

4869-4101-9060.1                                              MOTION

1  TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY

2  JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTOR AND DEBTOR'S

3  COUNSEL; AND PARTIES IN INTEREST:

4       Weneta M.A. Kosmala, Chapter 7 trustee ("Trustee") for the bankruptcy estate

5  ("Estate") of Stacy Odine Corban ("Debtor"), files this *Motion for Order: (1) Authorizing*

6  *Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant to*

7  *11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer,*

8  *Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C.*

9  *§ 363(m); and (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's*

10 *Commissions and Other Ordinary Costs of Sale* ("Motion").  In support of the Motion, the

11 Trustee submits the following memorandum of points and authorities and the Declarations

12 of Weneta M.A. Kosmala ("Kosmala Decl."), Clarence Yoshikane ("Yoshikane Decl.") and

13 George Barr ("Barr Decl."), and respectfully represents as follows:

14 **I.    INTRODUCTION**

15       The Trustee requests authority to sell real property located at 22596 Killy Street,

16 Lake Forest, California 92630 ("Property"), for a purchase price of $900,000.00, subject to

17 overbid and free and clear of all liens, claims and interests.  As discussed below, the

18 Trustee believes the purchase price represents the fair market value of the Property and

19 the proposed sale is reasonable and in the best interest of the Estate as it provides funds

20 for distribution to creditors.  The Trustee also requests (i) approval of the buyer,

21 successful bidder and back-up bidder as good-faith purchasers, (ii) approval of overbid

22 procedures, (iii) approval to pay certain liens, real estate taxes owed, the broker's

23 commission, and other costs of sale, and (iv) waivers of the lodging period and any stay of

24 the order granting this Motion.

25 **II.   STATEMENT OF FACTS**

26       **A.    Debtor's Bankruptcy Filing and Trustee's Appointment**

27       On June 2, 2023 ("Petition Date"), the Debtor filed a voluntary Chapter 13

28 bankruptcy petition, commencing case no. 8:23-bk-11139-TA ("Case").  The Case was

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  converted to one under Chapter 7 on August 28, 2023, and Weneta M.A. Kosmala was

2  appointed Chapter 7 trustee.

3      **B.    Property**

4      In her Schedule A/B, the Debtor scheduled the Property with a stated value of

5  $934,000.00 and liens totaling $534,847.68 ("Liens").  The Debtor claims an exemption in

6  the Property in the amount of $678,000.00 pursuant to C.C.P. § 704.730 ("Exemption").

7  On February 16, 2024, the Debtor filed a Waiver of Homestead Exemption. See dkt. 43.

8  As such, the Debtor does not assert an exemption in the Property. The relevant portions

9  of Schedules A/B, C and D are attached hereto collectively as **Exhibit 1**.  *See* Kosmala

10  Decl.

11      The Trustee was informed by her agent that the Property, including the garage,

12  was completely filled with trash that had been there for more than a year.  Therefore,

13  before the Property could be marketed for sale, all trash needed to be removed.  Counsel

14  for the Trustee and the Debtor were in contact regarding the cleanup of the Property and

15  cooperated to make the Property marketable.

16      **C.    Employment of Broker**

17      The Trustee solicited the assistance of Clarence Yoshikane ("Agent") of Berkshire

18  Hathaway HomeServices California Properties, a licensed California real estate broker

19  ("Broker"), in determining the value of the Property.  Mr. Yoshikane advised the Trustee

20  that the market value of the Property was at or near $799,000.00.  He also advised that

21  the market value may be higher once the Property was empty.

22      On March 8, 2024, the Trustee filed the *Application of the Chapter 7 Trustee to:*

23  *(1) Employ Real Estate Broker (Berkshire Hathaway HomeServices California Properties)*

24  *and Agent Clarence Yoshikane Pursuant to 11 U.S.C. §§ 327 and 328; and (2) Allow*

25  *Agent an Administrative Claim for Out-of-Pocket Expenses* (Dkt. 44, "Broker Application")

26  and notice thereon.  The employment terms provide for a total broker's commission

27  aggregating six percent (6%) of the sales price of the Property, upon close of escrow.

28  Should the Broker represent both the Trustee and the buyer, the total commission shall be

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  reduced to 4%.  The Agent shall have an allowed administrative claim in the Case for the

2  amount of his out-of-pocket expenses, not to exceed $15,000.00, which can be paid

3  through escrow from the proceeds of sale of the Property.  On March 29, 2024, the Court

4  entered the order approving the Broker Application (Dkt. 47, "Broker Order").  A copy of

5  the Broker Application and Broker Order is attached as **Exhibit 2**.

6        The Agent has incurred out-of-pocket expenses in connection with the Property for

7  removing trash ($11,300.00), trash hauling ($720.00), and lockout ($673.00), for a total of

8  $12,693.00 ("Administrative Claim").  A copy of the Agent's receipts is attached as

9  **Exhibit 3**.

10        **D.    Value and Marketing of the Property**

11        The Agent has extensive experience in marketing and selling real properties and,

12  based on an investigation of surrounding property values and the interest generated by

13  the listing, the Agent believes the proposed purchase price for the Property represents

14  current fair market value.  *See* attached Yoshikane Decl.  The Agent has listed the

15  Property for sale in the Orange County Multiple Listing Service.  The listing is also

16  available on various real estate websites.  The Agent has received and responded to

17  numerous inquiries regarding the Property and is continuing to market the Property for

18  overbids.  Prior to the sale hearing, the Agent will publish the details of the hearing and

19  the overbid procedures in the Orange County MLS.  *See* Yoshikane Decl.

20        **E.    Liens, Claims and Interests on the Property**

21        According to the Preliminary Report prepared by Fidelity National Title Company

22  with an effective date of May 24, 2024 ("Title Report"), a copy of which is attached as

23  **Exhibit 4**, the following items have been recorded against the Property:

24              Item A – property taxes for fiscal year 2024-2025, a lien not yet due and

25        payable;

26              Items B, C – intentionally left blank;

27

28

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Item D - the lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the California Revenue and Taxation Code;

Items 1 – 6 – water rights, covenants, conditions, restrictions and easements;

Item 7 - a deed of trust to secure an original indebtedness of $417,302.00 owing to Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Bank of America, N.A., its successors and/or assigns, recorded July 2, 2009, as Recording No. 2009000350905 of Official Records, as modified by an agreement recorded February 1, 2013, as Recording No. 2013000069701, the beneficial interest of which was assigned to Bank of America NA, recorded May 2, 2013, as Recording No. 2013000265596 of Official Records ("Bank of America Lien");

Item 8 – a deed of trust to secure an original indebtedness of $103,630.40 owing to Secretary of Housing and Urban Development, recorded April 5, 2012, as Recording No. 2012000193194, of Official Records ("HUD Lien");

Item 9 – notice of delinquent assessments and lien payable to the Lake Forest II Master Homeowners Association, recorded October 15, 2014, as Recording No. 2014000418100, of Official Records ("HOA Lien");

Item 10 – an abstract of judgment in the amount of $21,648.00 owing to Lake Forest II Master Homeowners Association, recorded August 9, 2021, as Recording No. 2021000499099, of Official Records ("HOA Judgment");

Items 11-12 – intentionally deleted;

Item 13 – requirement for proposed reconveyance; and

Item 14 – a deed of trust from Daniel W.  Corban to Stacy Odine Corban, recorded December 4, 2023, as Recording No. 2023-299579.

The Bank of America Lien, the HUD Lien, the HOA Lien and the HOA Judgment are undisputed.  Pursuant to the Purchase Agreement, real property taxes and

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

assessments are to be prorated between the Trustee and the Buyer through escrow as of the closing.  *See* Kosmala Decl.

According to the Court's register of claims, a copy of which is attached as **Exhibit 5**, the following relevant proofs of claim have been filed:

| Claim Number | Claimant | Date Filed | Claim Amount/ Classification | Basis |
|---|---|---|---|---|
| 1-1 | U.S. Department of Housing and Urban Development | 6/5/2023 | $103,630.40 – secured | Recordation of deed of trust |
| 2-1 | Bank of America, N.A. (Carrington Mortgage Services, LLC) | 6/22/2023 | $402,349.38 - secured | Recordation of deed of trust |

Claim 1-1 ("HUD Claim") filed by U.S. Department of Housing and Urban Development ("HUD") asserts a secured claim against the Property in the amount of $103,630.40.

Claim 2-1 ("Carrington Claim") filed by Bank of America, N.A. (c/o Carrington Mortgage Services, LLC ("Carrington") asserts a secured claim against the Property in the amount of $402,349.38.

The Trustee reserves the right to object to the validity, scope and priority of any disputed liens, claims and interest that have been or will be asserted against the Property. *See* Kosmala Decl.

## II.    <u>TERMS OF THE PROPOSED SALE</u>

GBKD Inc. ("Buyer"), whose address is 24050 Aliso Creek Rd Ste #200, Laguna Niguel, California 92677, has offered to purchase the Property, and the Trustee has accepted that offer.  The salient terms of the sale are as follows:

1.    The purchase price ("Purchase Price") is $900,000.00;

2.    The Buyer has made an initial deposit of $50,000.00 ("Deposit") payable and delivered to Weneta M.A. Kosmala, Chapter 7 Trustee.  The Deposit is currently held by the Trustee in her trust account.  The Deposit is refundable to the Buyer only in the event the Bankruptcy Court accepts a third party overbid, or does not approve the Purchase Agreement for reasons not attributable to the Buyer.  The Trustee shall retain the Deposit

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  as liquidated damages if the Bankruptcy Court approves the sale and the Buyer defaults

2  under the Purchase Agreement;

3      3.    The balance of the Purchase Price shall be tendered upon Close of Escrow

4  (as defined in the Purchase Agreement);

5      4.    The sale is as is, where is, with all faults, without warranty or recourse, but

6  free and clear of any and all liens, claims, and interests, together with all improvements,

7  as well as all easements and appurtenances pursuant to 11 U.S.C. §§ 363(b) and (f);

8      5.    The sale is subject to approval of the Bankruptcy Court; and

9      6.    The sale is subject to overbids.

10  The complete terms of the purchase and sale are set out in the *Residential*

11  *Purchase Agreement and Joint Escrow Instructions*, *Addendum to Purchase Agreement*,

12  and *Addendum No. One* (together, "Purchase Agreement") attached as **Exhibit 6**.  *See*

13  Golden Decl.

14  **III.    PROPOSED OVERBID PROCEDURES**

15      **A.    Overbid Procedures**

16  The Trustee proposes the following procedure to allow for overbids prior to the

17  Court's approval of the sale of the Property to ensure that the Property is sold for the best

18  possible price:

19      1.    Qualifying bidders ("Qualifying Bidder") shall:

20          a.    Bid at least $905,000 in cash for the Property;

21          b.    Set forth in writing the terms and conditions of the offer that are

22          at least as favorable to the Trustee as those set forth in the Purchase

23          Agreement attached as **Exhibit 6**;

24          c.    Be financially qualified, in the Trustee's exercise of her sound

25          business judgment, to close the sale as set forth in the Purchase

26          Agreement;

27

28

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

d.      Submit an offer that does not contain any contingencies to closing the sale, including, but not limited to, financing, inspection, or repair contingencies;

e.      Submit a cash deposit in the amount of $55,000.00 ($50,000.00 plus $5,000.00) ("Overbid Deposit") payable to Weneta M.A. Kosmala, Chapter 7 Trustee for the Bankruptcy Estate of Stacy Odine Corban, in the form of a cashier's check, which Overbid Deposit shall be non-refundable if the bid is deemed to be the Successful Bid, as defined in paragraph 4 below.  The Overbid Deposit, written offer, and evidence of financial qualification must be delivered to the Trustee (at the address shown in the upper left-hand corner of the first page of this Motion) by no later than **4:00 p.m**., Pacific Standard Time, two business days prior to the hearing on the Motion currently set for February 17, 2022 ("Overbid Deadline").  In his absolute and sole discretion, the Trustee shall have the right to accept additional overbids submitted prior to the hearing but after the Overbid Deadline.

2.      At the hearing on the Motion, only the Buyer and any party who is deemed a Qualifying Bidder shall be entitled to bid.

3.      Any incremental bid in the bidding process shall be at least $1,000.00 higher than the prior bid.

4.      At the hearing on the Motion and upon conclusion of the bidding process, the Trustee shall decide, subject to Court approval, which of the bids is the best bid, and such bid shall be deemed to be the "Successful Bid."  The bidder who is accepted by the Trustee as the successful bidder ("Successful Bidder") must pay all amounts reflected in the Successful Bid in cash at the closing of the sale. At the hearing on the Motion, and upon conclusion of the bidding process, the Trustee may also acknowledge a back-up bidder ("Back-Up Bidder") which shall be the bidder with the next best bid.  Should the Successful Bidder fail to close escrow

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

on the sale of the Property, the Trustee may sell the Property to the Back-Up Bidder without further Court order.

5.    Overbids shall be all cash and no credit shall be given to the purchaser or overbidder(s).

6.    Upon the conclusion of the auction, any Overbid Deposits, other than the deposits submitted by the Successful Bidder and the Back-Up Bidder, will be promptly returned.  The deposit of the Back-Up Bidder will be returned promptly following the close of escrow for the sale of the Property to the Successful Bidder.

7.    In the event the Buyer is not the Successful Bidder, then the Successful Bidder shall reimburse the Buyer up to $1,000.00 in costs incurred. Only a physical inspection, termite inspection and loan appraisal are reimbursable expenses.  Monies are to be collected by Escrow.  Proof of monies spent shall be given to the Successful Bidder.

## IV.    ARGUMENT

### A.    Legal Standard for Approving Sales Under §363(b)

Section 363(b) of the Bankruptcy Code empowers a trustee to "use, sell or lease . . . other than in the ordinary course of business, property of the estate."

In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case.  *In re American West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed transaction.  *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. B.A.P. 1996); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997).

> In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

in good faith, that the purchaser is proceeding in good faith and that it is an 'arms-length' transaction.

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. B.A.P. 1996).  A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for abuse of discretion.  *In re Walter*, 83 B.R. 14, 19 (9th Cir. B.A.P. 1988).

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 2010) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.*) 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)); *995 Fifth Ave., Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).  As long as the sale appears to enhance a debtor's estate, court approval of a trustee's decision to sell should only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.  *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property.  Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

**B.     The Sale Should Be Approved Because It Is Supported By A Good Business Justification and Is In the Best Interest of the Estate**

Here, the proposed transaction has a legitimate business justification and is in the best interest of the Estate because it will generate proceeds for the benefit of the creditors of the Estate.  The Purchase Price represents market value.  *See* Yoshikane Decl.  Notice

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

of the sale is being provided to all creditors, and the Trustee has proposed an overbid

procedure to ensure the Estate receives the highest and best price for the Property at the

hearing. After payment of undisputed liens, current and past due real estate taxes,

brokers' commissions, and cost of sale, the Trustee estimates that the sale will generate

approximately $311,363.57 for the benefit of the Estate. Accordingly, the Trustee believes

that the proposed sale is fair and reasonable and within the proper exercise of his

business judgment. *See Kosmala Decl.*

Below is a calculation of the approximate net sale proceeds to the Estate:

| | | |
|---|---|---|
| Purchase Price | | $900,000 |
| Buyer's initial deposit held by Trustee | $50,000.00 | |
| Bank of America (Carrington) Loan Payoff | $402,349.38 | |
| HUD Payoff | $103,630.40 | |
| HOA Payoff | $24,491.00 | |
| HOA Credit | | 5.60 |
| County Taxes | $892.30 | |
| Broker commission | $36,000.00 | |
| Agent's Administrative Claim | $15,074.95 | |
| Title, taxes, recording charges | $4,104.00 | |
| Escrow charges | $2,100.00 | |
| Total | $950,005.60 | |
| **Approximate Net proceeds** | **$311,363.57 (including deposit held by Trustee)** | |

The seller's estimated settlement statement ("Settlement Statement") prepared by

Escrow is attached as **Exhibit 7**. *See Kosmala Decl.*

**C.    The Price is Reasonable Based Upon the Trustee's Marketing Efforts**

On May 9, 2024, the Trustee listed the Property for sale at $899,900. To date, the

Agent has accommodated 21 requests for showings and responded to 18 phones calls

from agents and 7 calls from prospective buyers. The Trustee has received one offer to

purchase the Property.

Based upon the marketing efforts of the Trustee and the variety of prices explored

in the market, the Buyer's offer is fair and reasonable given the condition of the Property,

location and listing price. As such, the price is reasonable under these circumstances.

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**Golden Goodrich LLP**
2070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    **D.    The Sale is Made in Good Faith**

2    "Good faith encompasses fair value, and further speaks to the integrity of the

3   transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal.

4   1991) (internal quotation marks omitted).  Bad faith includes collusion between buyer and

5   seller or otherwise taking unfair advantage of other potential purchasers, such as a

6   collusive insider transaction.; *id.*; see also *In re Indus. Valley Refrigeration & Air*

7   *Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

8    The sale of the Property was negotiated at arms' length.  There is no fraud,

9   collusion, or insider transactions present here, and the Buyer received no special

10   treatment or consideration.  There is no connection or relation between the Debtor and the

11   Buyer or the Trustee and the Buyer.  Moreover, the Property has been actively marketed,

12   the sale will be properly publicized on the Bankruptcy Court's website, and the Trustee

13   intends to further market the property pending a hearing on this Motion.  In short, the

14   Trustee has accepted the highest and best offer. As a result, the sale is made in good

15   faith.

16    **E.    The Trustee May Sell the Property Free and Clear of Liens, Claims, and**

17    **Interests**

18    The Trustee seeks this Court's authority to sell the Property free and clear of liens

19   pursuant to 11 U.S.C. §§ 363(b) and (f) of the Bankruptcy Code.  Section 363(b) of the

20   Bankruptcy Code provides that:

21        [t]he trustee, after notice and a hearing, may use, sell, or lease,
         other than in the ordinary course of business, property of the
22        estate.

23    In addition, 11 U.S.C. § 363(f) provides that:

24        [t]he trustee may sell property. . . free and clear of any interest
         in such property of an entity other than the estate, only if _. . .
25        (1)    applicable nonbankruptcy law permits sale of
                such property free and clear of such interest;. . .
26        (2)    such entity consents;. . .
         (3)    such interest is a lien and the price at which such
27               property is to be sold is greater than the
                aggregate value of all liens on such property;
28        (4)     such interest is in bona fide dispute; or

4869-4101-9060.1                    12                              MOTION

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in the disjunctive, authority to sell the Property free and clear of any and all interests therein should be granted if, with respect to each lien holder, any of the conditions are met.

### 1.    The Sale Should Be Free and Clear Under §363(f)(1)

Under §363(f)(1), estate property may be sold free and clear of certain liens, claims and interest if applicable nonbankruptcy law permits a sale free and clear of such interest. §363(f)(1).

Here, the Bank of America Lien, the HUD Lien and the HOA Lien will be paid in full. Because these liens will be satisfied in full, the sale should be approved free and clear of these liens.  Section 363(f)(1) is satisfied as to these liens.

### 2.    The Sale Should Be Free and Clear Under §363(f)(2)

As noted above, a proposed sale of estate property can be approved by the Court under §363(f)(2) where an entity consents.  §363(f)(2).

The Trustee intends to notify all interested parties through the notice of the motion. Any party objecting to the sale may file their objection and be heard at the hearing on the Motion. If there is no objection, the parties will be deemed to have consented to the sale of the Property. *See Veltman v. Whetzal*, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement authorizing sale free of interest, constituted consent); *In re Tabore, Inc.*, 175 B.R. 855 (Bankr. D. N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of § 363); *In re Shary*, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor license constituted consent to sale). Thus, pursuant to §363(f)(2), the Trustee may sell the Property free and clear of any lien, claim or interest of entities who fail to object because the noticed parties will be deemed to have consented to the sale of the Property if they make no objections to the sale.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1

**3.    The Sale Should Be Free and Clear of all Liens and**

2

**Encumbrances Pursuant to Section 363(f)(3)**

3       The Purchase Price exceeds the value of all of the encumbrances against the

4   Property.  The Bank of America Lien, the HUD Lien and the HOA Lien and any real

5   property taxes are undisputed unless the payoff demands contains fees, costs, or

6   interests that appear unsubstantiated.

7                    **4.    Tax Consequences**

8       Any tax liability resulting from the sale may be offset by other losses of the Estate

9   and the administrative costs of administration of the Estate, and will be paid from the net

10  sale proceeds.  The Estate is still expected to receive a substantial distribution from the

11  sale despite any net gain to the Estate.  *See Kosmala Decl.*

12            **F.    <u>Adequate Notice of the Sale is Proposed</u>**

13      The Trustee proposes to provide notice of the sale to be posted by the Clerk's

14  Office and to serve notice of the sale on the Office of the United States Trustee, all

15  creditors, all potential overbidders, and all other parties receiving ECF and special notice

16  in this case.  The Agent will also post the overbid procedures on the MLS.  Further, the

17  Property is subject to overbid, and the ability of other potentially interested parties to

18  provide competing offers for the Property ensures that the proposed sale will not result in

19  a lucrative "windfall" to the Buyer at the expense of creditors of the Estate.  *See In re*

20  *Onouli Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988).

21            **G.    <u>Waiver of the Fourteen-Day Period for Effectiveness of the Sale Order</u>**

22      Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property

23  other than cash collateral is stayed until the expiration of 14 days after entry of the order,

24  unless the court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004

25  provides:

26         The court may, in its discretion, order that Rule 6004(g) [now 6004(h)]
           is not applicable so that the property may be used, sold, or leased
27         immediately in accordance with the order entered by the court.
           Alternatively, the court may order that the stay under Rule 6004(g) [now
28         6004(h)] is for a fixed period less than 10 [now 14] days.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Given the notice and full opportunity to object, respond, or participate in overbid procedures presented by this Motion, the Trustee believes that, unless there are objections to the Motion that are not consensually resolved, it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not applicable, and the Property may be sold immediately.  Accordingly, the Trustee requests that the Court authorize the sale to be effectuated immediately upon entry of the order approving this Motion.

**H.**   **The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C. § 363(m)**

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

A good faith buyer "is one who buys 'in good faith' and 'for value.'"  *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).  In the instant case, the Buyer is buying in good faith and has offered to pay market value for the Property.  The anticipated sale of the Property has been negotiated with the Buyer in "arms'-length" discussions.  *See* Kosmala Decl.  Moreover, the sale will be conducted in a commercially reasonable manner following appropriate notice and evidence of the Trustee's marketing efforts.  Based on such facts and circumstances, the Trustee believes that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

**I.     The Bankruptcy Court Has the Authority to Implement the Proposed Overbid Procedures**

Implementation of the bidding procedures is an action outside of the ordinary course of business.  11 U.S.C. § 363(b)(1) provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  Furthermore, under 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Thus, pursuant to §§ 363(b)(1) and 105(a), this Court may authorize the implementation of overbidding procedures. The bankruptcy court may issue orders determining the terms and conditions for overbids with respect to a sale of estate assets, including specifying the minimum consideration required for an overbid, the particular contractual terms required to be offered by overbidders, and requiring and setting the amount of potential overbidder's deposits.  *In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982).  Here, the overbid procedures proposed by the Trustee are fair and reasonable under the circumstances.  Additionally, the proposed overbid procedures will ensure the sale generates the greatest possible value to the Estate.  Accordingly, the proposed overbidding procedures should be approved by the Court.

**J.     The Broker Commission Should Be Approved**

Real estate brokers are "professionals" for purposes of section § 327 of the Bankruptcy Code and, as such, their employment must be approved by the court.  *In re Cummins*, 15 B.R. 893, 895 (B.A.P. 9th Cir. 1981).

The employment of the Broker and the Agent is sought under §328.  If the sale is consummated, they will have performed a valuable service for the Estate.  Accordingly, the commission arrangement as outlined in this Motion is reasonable, should be approved by the Court and payment should be authorized out of escrow in lieu of the requirement of a fee application.  In addition, the Agent should be paid the Administrative Claim as provided in the Application.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    **V.    CONCLUSION**

2          Based on the foregoing, the Trustee respectfully requests that this Court enter an

3    order:

4          1.    Granting the Motion.

5          2.    Approving the terms of the Purchase Agreement attached as **Exhibit 6** and

6    authorizing the Trustee to sell the Property to the Successful Bidder, or the Back-Up

7    Bidder, "as is," "where is," "with all faults," and without warranty or recourse, but free and

8    clear of any and all liens, claims, and interests, together with all improvements, as well as

9    all easements and appurtenances, pursuant to 11 U.S.C. § 363(b) and (f), and authorizing

10   the Trustee to pay, through escrow, from the proceeds of the sale of the Property and

11   without further order of the Court, the Bank of America Lien, the HUD Lien, the HOA Lien,

12   real property taxes and assessments prorated as of the close of escrow, the above-

13   described broker's commission, and any escrow fees, title insurance premiums and other

14   ordinary and typical closing costs and expenses payable by the Trustee pursuant to the

15   Purchase Agreement or in accordance with local custom, including the Agent's

16   Administrative Claim.  The sales proceeds remaining after payment of these items shall

17   constitute the net sale proceeds ("Net Proceeds").  The Net Proceeds will not be

18   disbursed without further order of this Court.

19         3.    Determining that the Buyer, the Successful Bidder, and the Back-Up Bidder

20   are "good faith purchasers" pursuant to 11 U.S.C. § 363(m).

21         4.    Authorizing the return of any deposit made with the Trustee or escrow

22   without further order to those who are not the buyer.

23         5.    Authorizing the Trustee to pay, from the Net Proceeds, any tax liability to the

24   Estate from the sale.

25         6.    Approving the overbid procedures outlined in the Motion.

26         7.    Authorizing the Trustee to execute any documents and take any and all

27   necessary actions to consummate the sale of the Property.

28

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1       8.    Reserving the Trustee's right to object to the validity, scope and priority of

2  any disputed liens, claims and interest that have been or will be asserted against the

3  Property.

4       9.    Waiving any requirements for lodging periods of the order approving this

5  Motion imposed by Local Bankruptcy Rule 9021-1 and any other applicable bankruptcy

6  rules.

7      10.    Waiving the stay of the order approving this Motion imposed by Federal Rule

8  of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules.

9      11.    For such other and further relief as the Court may deem just and proper.

10                  Respectfully submitted,

11                  GOLDEN GOODRICH LLP

12

13  Dated:  June 14, 2024            By:*/s/ Ryan W. Beall*

14                            Jeffrey I. Golden
                                 Ryan W. Beall

15                            Attorneys for Chapter 7 Trustee
                                 Weneta M.A. Kosmala

16

17

18

19

20

21

22

23

24

25

26

27

28

**Golden Goodrich LLP**
2070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## DECLARATION OF WENETA M.A. KOSMALA[1]

I, Weneta M.A. Kosmala, declare as follows:

1.      I am the Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of debtor Stacy Odine Corban ("Debtor").  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions and Other Ordinary Costs of Sale* ("Motion").

2.      The relevant portions of the Debtor's Schedules A/B, C and D filed with the Court are attached hereto collectively as **Exhibit 1**.

3.      Attached as **Exhibit 2** is a true and correct copy of the Broker Application and the Broker Order.

4.      Attached as **Exhibit 4** is a true and correct copy of the Preliminary Title Report.

5.      Attached as **Exhibit 5** is a true and correct copy of the Claims Register.

6.      I seek approval of the proposed Purchase Agreement, a true and correct copy of which is attached as **Exhibit 6**.  The proposed Buyer has delivered the requisite deposit and I am holding the Buyer's Deposit in my trust account.

7.      The Bank of America Lien, the HUD Lien and the HOA Lien are undisputed. Pursuant to the Purchase Agreement, real property taxes and assessments are to be prorated between the Trustee and the Buyer through escrow as of the closing.

---

[1] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

8.      A true and correct copy of the Settlement Statement is attached as **Exhibit 7**.

9.      I believe the proposed sale is fair and reasonable, within the proper exercise of my business judgment, and in the best interest of the Estate.  Based on the Agent's advice, I believe the Buyer is offering fair market value for the Property.  I have also received an overbid for the Property.  The anticipated sale of the Property has been negotiated in good faith with the Buyer in "arms'-length" discussions.  I have no relationship with the Buyer.  Moreover, the sale will be conducted in a commercially reasonable manner following appropriate notice, with an opportunity for overbids.

10.      I reserve the right to object to the validity, scope and priority of any disputed liens, claims and interest that have been or will be asserted against the Property.

11.      Any tax liability to the Estate resulting from the sale may be offset by other losses of the Estate and the administrative costs of administration of the Estate and will be paid from the net sale proceeds.  The Estate is still expected to receive a substantial distribution from the sale despite any net gain to the Estate.

12.      I estimate the sale of the Property will generate approximately $311,363.57 for the benefit of the Estate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14 th day of June, 2024, at Newport Beach, California.

_____

Weneta M.A. Kosmala

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## DECLARATION OF CLARENCE YOSHIKANE[2]

I, Clarence Yoshikane, declare as follows:

1.　　I am a real estate agent duly licensed in the State of California and employed with Berkshire Hathaway HomeServices ("Broker"), located at 1400 Newport Center Drive, Suite 200, Newport Beach, California 92660, telephone (714) 606-5765. I have been licensed as a real estate agent since 1980 and have specialized in the sale of residential and commercial real property since that time. I have consistently placed in the top 5% of agents in my company.  I am familiar with the value of real property in Fountain Valley, California.  I make this declaration in support of the *Chapter 7 Trustee's Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions and Other Ordinary Costs of Sale* ("Motion").

2.　　I am the agent primarily responsible for marketing the Property for sale.

3.　　On May 9, 2024, I listed the Property for sale in the Orange County Multiple Listing Service.  The listing is also available on numerous real property websites.  To date, 21 potential buyers have toured the Property.  I have received and responded to approximately 18 phone calls from agents and approximately 7 phone calls from potential buyers regarding the Property, and have attended and overseen the showing of the Property to several prospective buyers.  I am continuing to market the Property for overbids.  Prior to the sale hearing, I will publish the details of the hearing and the overbid procedures in the MLS.

---

[2] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

4.    Based on my experience and investigation of surrounding property values, I believe the Purchase Price represents fair market value for the Property.

5.    Attached as **Exhibit 3** is a true and correct copy of receipts for my out-of-pocket expenses incurred for trash removal ($11,300.00), trash hauling ($720.00), and lockout ($673.00), for a total of $12,693.00..

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of June, 2024, at Newport Beach. California.

ClarenceYoshikane

**Golden Goodrich LLp**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

## **DECLARATION OF GEORGE BARR**

I, George Barr, hereby declare and state as follows:

1.      I know each of the following facts to be true of my own personal knowledge except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.

2.      I am Chief Executive Officer of GBKD Inc., the proposed buyer for the real property at 22596 Killy Street, Lake Forest, California 92630 ("Property").

3.      I have no connection or relationship with the Trustee.  Until I entered into negotiations with the Trustee to purchasing the Property, I had never met or heard of the Trustee.

5.      I am not a creditor of Stacy Odine Corban, the debtor in this case.

6.      I have negotiated the purchase of the Property from the Trustee in good faith.  I have not colluded with anyone regarding the purchase of the Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of June, 2024, at Laguna Niguel, California.

*George Barr*
George Barr

Golden Goodrich LLp
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

# Exhibit 1

| Fill in this information to identify your case and this filing: |
|---|

| Debtor 1 | **Stacy** First Name | **Odine** Middle Name | **Corban** Last Name |
|---|---|---|---|

| Debtor 2 (Spouse, if filing) | First Name | Middle Name | Last Name |
|---|---|---|---|

United States Bankruptcy Court for the: **Central** District of **California**

Case number **8:23-bk-11139-MH**

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.    **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

1.1    **22596 Killy St**
Street address, if available, or other description

**Lake Forest, CA 92630-4619**
City    State    ZIP Code

**Orange**
County

**What is the property?** Check all that apply.

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Source of Value: **Zillow**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$934,000.00** | **$934,000.00** |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee Simple**

☑ **Check if this is community property** (see instructions)

2.    **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** ...........................    →    **$934,000.00**

## Part 2:    Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.    **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

Exhibit 1, Page 24

Fill in this information to identify your case:

| Debtor 1 | __Stacy__ | __Odine__ | __Corban__ |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:     __Central District of California__

Case number     __8:23-bk-11139-MH__
(if known)

☐ Check if this is an
amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt
04/22

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on** *Schedule A/B: Property* **(Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of** *Part 2: Additional Page* **as necessary. On the top of any additional pages, write your name and case number (if known).**

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

---

**Part 1:    Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*
   - ☑ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)
   - ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| Brief description: 22596 Killy St Lake Forest, CA 92630-4619 <br> Line from *Schedule A/B*:   1.1 | $934,000.00 | ☑ ____$678,000.00____ <br> ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.730 |
| Brief description: 2000 Toyota Solara <br> Line from *Schedule A/B*:   3.1 | $1,000.00 | ☑ ____$1,000.00____ <br> ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.010 |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)
   - ☐ No
   - ☑ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
     - ☑ No
     - ☐ Yes

<table>
<tr><td colspan="3">

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Stacy** | **Odine** | **Corban** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | | **Central District of California** | |
| Case number (if known) | **8:23-bk-11139-MH** | | |

</td><td>

☐ Check if this is an amended filing

</td></tr>
</table>

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property         12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:  List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |
|---|---|---|---|

**2.1** Bank of America
Creditor's Name

Carrington Mortgage Services

1600 South Douglass Road
Number        Street

Anaheim, CA 92806-5948
City        State        ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Date debt was incurred**
6/29/2009

**Describe the property that secures the claim:**

22596 Killy St Lake Forest, CA 92630-4619

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
   **Deed of Trust**

**Last 4 digits of account number**  4  7  8  7

Column A: $382,569.28
Column B: $934,000.00
Column C: $0.00

| Add the dollar value of your entries in Column A on this page. Write that number here: | $382,569.28 |
|---|---|

Exhibit 1, Page 26

| Debtor 1 | **Stacy** | **Odine** | **Corban** | | Case number *(if known)* 8:23-bk-11139-MH |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| **Part 1:** | **Additional Page**<br>After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth. | **Amount of claim**<br>Do not deduct the value of collateral. | **Value of collateral that supports this claim** | **Unsecured portion**<br>If any |

---

**2.2** David Harris
Creditor's Name

1141 Summerview Lane
Number    Street

Huntingtn Bch, CA 92648-4155
City    State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Date debt was incurred**
8/2022

**Describe the property that secures the claim:**
22596 Killy St Lake Forest, CA 92630-4619

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Last 4 digits of account number** __ __ __ __

| Column A | Column B | Column C |
|---|---|---|
| $27,000.00 | $934,000.00 | $0.00 |

---

**2.3** Lake Forest II Master HOA
Creditor's Name

24752 Toledo Lane
Number    Street

Lake Forest, CA 92630-2318
City    State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Date debt was incurred**
2021

**Describe the property that secures the claim:**
22596 Killy St Lake Forest, CA 92630-4619

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Judgment lien from a lawsuit
☑ Other (including a right to offset)
   **Abstract of Judgment / CC&Rs**

**Last 4 digits of account number** 7 1 5 3

| Column A | Column B | Column C |
|---|---|---|
| $21,648.00 | $934,000.00 | $0.00 |

---

| **Add the dollar value of your entries in Column A on this page. Write that number here:** | $48,648.00 |
|---|---|

Exhibit 1, Page 27

Debtor 1  **Stacy**        **Odine**        **Corban**                Case number *(if known)* 8:23-bk-11139-MH
         First Name      Middle Name      Last Name

| Part 1: | **Additional Page**<br>**After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.** | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |

---

**2.4**  US Department of
Creditor's Name

  Housing and Uban Development

  1 Sansome Street, 12th Floor
Number      Street

  San Francisco, CA 94104-4430
City            State      ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Date debt was incurred**
3/16/2011

**Describe the property that secures the claim:**

  22596 Killy St Lake Forest, CA 92630-4619

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
    **Deed of Trust**

**Last 4 digits of account number**  3  8  2  1

| | Column A | Column B | Column C |
|---|---|---|---|
| | $103,630.40 | $934,000.00 | $0.00 |

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $103,630.40 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $534,847.68 |

Exhibit 1, Page 28

# Exhibit 2

GOLDEN GOODRICH LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  **GOLDEN GOODRICH LLP**
   Jeffrey I. Golden, State Bar No. 133040
2  jgolden@go2.law
   Ryan W. Beall, State Bar No. 313774
3  rbeall@go2.law
   3070 Bristol Street, Suite 640
4  Costa Mesa, California 92626
   Telephone   714-966-1000
5  Facsimile   714-966-1002

6  Proposed Attorneys for Chapter 7 Trustee
   Weneta M.A. Kosmala

7

8              **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| 10  In re | Case No. 8:23-bk-11139-TA |
| 11  STACY ODINE CORBAN, | Chapter 7 |
| 12              Debtor. | **APPLICATION OF THE CHAPTER 7** |
| 13 | **TRUSTEE FOR AUTHORIZATION TO:** |
| | **(1) EMPLOY REAL ESTATE BROKER** |
| 14 | **(BERKSHIRE HATHAWAY** |
| | **HOMESERVICES CALIFORNIA** |
| 15 | **PROPERTIES) AND AGENT CLARENCE** |
| | **YOSHIKANE PURSUANT TO 11 U.S.C.** |
| 16 | **§§ 327 AND 328; AND (2) ALLOW AGENT** |
| | **AN ADMINISTRATIVE CLAIM FOR OUT-** |
| 17 | **OF-POCKET EXPENSES;** |
| | **DECLARATIONS OF WENETA M.A.** |
| 18 | **KOSMALA AND CLARENCE YOSHIKANE** |
| | **IN SUPPORT** |
| 19 | **[22596 Killy Street, Lake Forest,** |
| 20 | **California 92630]** |
| 21 | [No Hearing Required Pursuant to Local |
| | Bankruptcy Rule 2014-1(b)(1)] |

22  **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

23  **JUDGE:**

24        Weneta M.A. Kosmala, the Chapter 7 trustee ("Trustee") for the bankruptcy estate

25  ("Estate") of debtor Stacy Odine Corban ("Debtor"), files this *Application of the Chapter 7*

26  *Trustee to: (1) Employ Real Estate Broker (Berkshire Hathaway HomeServices California*

27  *Properties) and Agent Clarence Yoshikane Pursuant to 11 U.S.C. §§ 327 and 328; and*

28  *(2) Allow Agent an Administrative Claim for Out-of-Pocket Expenses* ("Application").  In

EMPLOYMENT APPLICATION

Exhibit 2, Page 29

1  support of the Application, the Trustee submits the attached declarations of Weneta M.A.

2  Kosmala ("Kosmala Declaration") and Clarence Yoshikane ("Yoshikane Declaration").

3  **I.    STATEMENT OF FACTS**

4      On June 2, 2023 ("Petition Date"), the Debtor filed a voluntary Chapter 13

5  bankruptcy petition, commencing case no. 8:23-bk-11139-TA ("Case").  The Case was

6  converted to one under Chapter 7 on August 28, 2023, and Weneta M.A. Kosmala was

7  appointed Chapter 7 trustee.  In her Schedule A/B, the Debtor scheduled the following

8  assets with the following values assigned by the Debtor:

9      -    22596 Killy Street, Lake Forest, California 92630 ("Property") with a

10  stated value of $934,000.00 and liens totaling $534,847.68 ("Liens").  The Debtor

11  claims an exemption in the Property in the amount of $678,000.00 pursuant to

12  C.C.P. § 704.730 ("Exemption").  On February 16, 2024, the Debtor filed a Waiver

13  of Homestead Exemption. See dkt. 43. As such, the Debtor does not assert an

14  exemption in the Property.

15      -    Personal property valued at $7,240.00, consisting of vehicles

16  ($1,000.00), personal and household items ($1,400.00), and financial assets

17  ($4,840.00).  See dkt. 12, Schedules A/B, C and D. On March 7, 2024, David

18  Harris filed a non-priority unsecured claim in the amount of $27,000.00.

19  On February 16, 2024, the Debtor filed a Waiver of Homestead Exemption. See

20  dkt. 43.

21  There have been three claims filed. Claim 3-1 is the claim of David Harris as a non-

22  priority unsecured claim in the amount of $27,000.00.

23  The Trustee and her counsel are reviewing the Debtor's petition, schedules,

24  statement of financial affairs, and documents provided by the Debtor's counsel as well as

25  valuations of the Property along with debts asserted against the Debtor.  The Trustee is

26  informed that the Debtor wishes to liquidate the Property. To that end, the Debtor has

27  executed a wavier of her homestead exemption which the Trustee is informed will be filed

28  shortly in this case.

**Golden Goodrich LLp**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Exhibit 2, Page 30

1      The Trustee is informed by her agent that the Property, including the garage, is

2 completely filled with trash that has been there for more than a year.  Therefore, before

3 the Property can be marketed for sale, all trash must be removed and the Property must

4 be thoroughly cleaned.  The Property's value is highly contingent on the ability of the

5 Trustee's agent to have the Property emptied and cleaned before marketing begins. The

6 Trustee's and Debtor's counsel have been in contact regarding the cleanup of the

7 Property and are cooperating to make the Property marketable.

8 **II.**    **PROPOSED EMPLOYMENT OF BROKER AND AGENT**

9      The Trustee has solicited the assistance of Clarence Yoshikane ("Agent") of

10 Berkshire Hathaway HomeServices California Properties, a licensed California real estate

11 broker ("Broker"), in determining the value of the Property.  Mr. Yoshikane has advised the

12 Trustee that the current market value of the Property is approximately $799,900.  *See*

13 Yoshikane Declaration.  However, the market value may be higher once the Property is

14 empty and clean.  *See* Yoshikane Declaration. After cleaning the Property, the Broker

15 shall have the ability to adjust the list price as needed in its professional opinion in order to

16 obtain the highest possible value for the Property.

17      The Agent has inspected the Property and has advised the Trustee that prior to

18 marketing, the Property needs extensive trash removal and interior cleaning (together,

19 "Services").  Due to the lack of funds in the Estate, the Agent is willing to undertake and

20 advance the cost of the Services, up to $15,000.  *See* Yoshikane Declaration.  The

21 Agent's profile is attached as **Exhibit 2**.  The amount advanced by the Agent for the

22 Services will be payable as an administrative expense of the Estate from the proceeds of

23 sale of the Property.

24      To facilitate the sale of the Estate's interest in the Property, the Trustee seeks to

25 employ an experienced and reputable real estate broker and proposes to employ the

26 Broker and the Agent pursuant to 11 U.S.C. §§ 327(a) and 328.  The Agent has agreed to

27 advertise the Property, to market and show the Property, to represent the Estate in

28

**Golden Goodrich LLp**
2070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

3

connection with the sale of the Property, and to advise the Trustee with respect to obtaining the best offer for the sale of the Property.

The terms of the Broker's employment agreed to by the Trustee, subject to approval of the Court, as set forth in the Residential Listing Agreement (Exclusive Authorization and Right to Sell), the Addendum to Exclusive Authorization and Right to Sell, Possible Representation of More than One Buyer or Seller – Disclosure and Consent, and the Disclosure Regarding Real Estate Agency Relationship (together, "Listing Agreement"), a copy of which is attached as **Exhibit 1**, are as follows:

1.    The Broker will have an exclusive listing on the Property.  The listing price for the Property will be $799,900.  The Listing Agreement, including the listing price, may be modified by the Trustee in her discretion.[1]  The listing and sale of the Property is subject to Bankruptcy Court approval.  Any sale of the Property will be "as is," without any representations, guarantees or warranties of any kind, whether expressed or implied, by the Trustee.  Upon the presentation of an acceptable purchase offer for the Property, the Trustee will file a motion seeking court authority to sell the Property and pay the total broker's commission of six percent (6%) from the sale proceeds through escrow.  The Trustee's motion will contain an overbid procedure.

2.    The Trustee shall have the right to sell the Property to anyone who, prior to the date of entering into the Listing Agreement, has expressed an interest in purchasing the Property, and the Broker shall not be entitled to a commission on such a sale.

3.    The Trustee shall further have the right at any time to sell the Estate's interest in the Property to the Debtor, Stacy Odine Corban, Case No. 8:23-bk-11139-TA. If the Debtor is the successful overbidder over a third party's purchase

Golden Goodrich LLp
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

---

[1] The Agent anticipates that the listing price may be adjusted after all trash has been removed and the Property has been cleaned.

Golden Goodrich LLp
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

offer presented by the Broker to the Trustee and as to which the Broker would have been entitled to a commission, and which the Trustee has accepted subject to Court approval, the Broker shall be entitled to the full commission of 3% of the final sale price as set forth in the Listing Agreement.

4. Should the Broker represent both the Trustee and the buyer, the total commission shall be reduced to 4%.

5. The Agent is informed and understands that no sale may be consummated until after notice and a hearing. Further, the Agent is aware of the provisions of 11 U.S.C. § 328(a) and understands and accepts that, notwithstanding the terms and conditions of employment and compensation provided in the Listing Agreement, the Court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

6. Upon completion of the Services and the Trustee's approval of the Agent's out-of-pocket expenses, the Agent will have an allowed administrative claim in the Case for the amount of his expenses, not to exceed $15,000, which can be paid through escrow from the proceeds of sale of the Property.

## III.    MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to 11 U.S.C. § 327(a), a trustee may employ attorneys and other professional persons who do not hold or represent an interest adverse to the estate, and who are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties.

The Trustee employs the Agent in other unrelated cases.

Except as provided above, to the best of the Trustee's knowledge, and based upon the attached Yoshikane Declaration, the Broker and the Agent:

1.      have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, or any other party in interest, or their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

2.      are not creditors, equity security holders or insiders of the Debtor;

3.      are not and were not, within two years before the date of the filing of the petition, directors, officers, or employees of the Debtor;

4.      do not represent an individual or entity with an interest adverse to the Estate;

5.      are not related to the United States Trustee or to a bankruptcy judge in the Central District of California;

6.      are disinterested within the meaning of 11 U.S.C. §§ 327(a) and 101(14);

7.      do not have any fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling broker, as provided in the Listing Agreement; and

8.      will not receive a retainer in this case.

**IV.     CONCLUSION**

The Trustee believes the employment of the Broker and the Agent on the terms and conditions provided herein is in the best interests of the Trustee and the Estate.

**WHEREFORE,** the Trustee prays that the Court enter an order:

1.      Approving the Application;

2.      Authorizing the Trustee to employ the Broker and the Agent, as an expense of the Estate, to market and sell the Estate's interest in the Property upon the terms and conditions set forth herein and in the Listing Agreement, and authorizing the Trustee to execute the Listing Agreement attached hereto and any and all other ancillary documents necessary to list the Property for sale; and

Golden Goodrich LLp
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

3.     Allowing the Agent an administrative claim in the Case of up to $15,000,

which can be paid through escrow from the proceeds of sale of the Property.

Respectfully submitted,

Dated:  March 8, 2024                     GOLDEN GOODRICH LLP


By:  _/s/ Ryan W. Beall_
      RYAN W. BEALL
      Proposed Attorneys for Weneta M.A.
      Kosmala, Chapter 7 Trustee

**Golden Goodrich LLp**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Exhibit 2, Page 35

1
2

## DECLARATION OF WENETA M.A. KOSMALA

3      I, Weneta M.A. Kosmala, declare:

4      1.      I am the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of

5  Stacy Odine Corban ("Debtor").  I know each of the following facts to be true of my own

6  personal knowledge or information and belief and, if called as a witness, I could and would

7  competently testify with respect thereto.  I am submitting this Declaration in support of the

8  *Application of the Chapter 7 Trustee to: (1) Employ Real Estate Broker (Berkshire*

9  *Hathaway HomeServices California Properties) and Agent Clarence Yoshikane Pursuant*

10  *to 11 U.S.C. §§ 327 and 328; and (2) Allow Agent an Administrative Claim for Out-of-*

11  *Pocket Expenses* ("Application").  Any capitalized terms not expressly defined herein shall

12  have the meanings provided in the Application.

13      2.      According to the proceedings docket, on or about June 2, 2023, the Debtor

14  filed a voluntary Chapter 13 bankruptcy petition, commencing the Case.  The Case was

15  converted to one under Chapter 7 on August 28, 2023, and I was appointed Chapter 7

16  trustee.

17      3.      The Debtor scheduled the real property located at 22596 Killy Street, Lake

18  Forest, California 92630 ("Property") with a stated value of $934,000.00 and liens totaling

19  $534,847.68 ("Liens").  The Debtor claims an exemption in the Property in the amount of

20  $678,000.00 pursuant to C.C.P. § 704.730 ("Exemption").  On February 16, 2024, the

21  Debtor filed a Waiver of Homestead Exemption. See dkt. 43.

22      3.      The Debtor scheduled personal property valued at $7,240.00.  On March 7,

23  2024, David Harris filed a non-priority unsecured claim in the amount of $27,000.00.

24      4.       The Agent has informed me that the current market value of the Property is

25  approximately $799,900.  However, the market value may be higher once the Property is

26  empty and clean.

27      5.      The Agent has inspected the Property and has advised me that prior to

28  marketing, the Property needs extensive trash removal and interior cleaning (together,

**Golden Goodrich LLp**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Exhibit 2, Page 36

"Services").  Due to the lack of funds in the Estate, the Agent is willing to undertake and advance the cost of the Services, up to $15,000, to enhance the value of the Property and its marketability.  Therefore, I propose that the Agent be allowed an administrative claim in the Case not to exceed $15,000 for such Services, which can be paid through escrow from the proceeds of sale of the Property.

6.       I intend the sell the Estate's interest in the Property upon further court order to pay claims of creditors and expenses of administration and seek the Court's authorization to employ the Broker and the Agent to advertise the Property, to market and show the Property, to represent the Estate in connection with the sale of the Property, and to advise me with respect to obtaining the best offer for the sale of the Property.

7.       I shall have the right to sell the Property to anyone who, prior to the date of entering into the Listing Agreement, has expressed an interest in purchasing the Property, and the Broker shall not be entitled to a commission on such a sale.

8.       I shall further have the right at any time to sell the Estate's interest in the Property to the Debtor.  If the Debtor is the successful overbidder over a third party's purchase offer presented to me by the Broker and as to which the Broker would have been entitled to a commission, and which I have accepted subject to Court approval, the Broker shall be entitled to the full commission of 3% of the final sale price as set forth in the Listing Agreement.

9.       Should the Broker represent both the Estate and the buyer, the total commission shall be reduced to 4%.

//

//

//

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

EMPLOYMENT APPLICATION

Exhibit 2, Page 37

10.    The Agent has been informed and understands that no sale may be consummated until after notice and a hearing.  Further, the Agent is aware of the provisions of 11 U.S.C. § 328(a) and understands and accepts that, notwithstanding the terms and conditions of employment and compensation provided in the Listing Agreement, the Court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___8th___ day of March, 2024, at Newport Beach, California.

_____
Weneta M.A. Kosmala

Golden Goodrich LLp
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

4862-3471-1971.1

10

EMPLOYMENT APPLICATION

Exhibit 2, Page 38

## DECLARATION OF CLARENCE YOSHIKANE

I, Clarence Yoshikane, declare:

1.      I am a real estate agent licensed in the State of California.  I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto.  I am an agent of Berkshire Hathaway HomeServices California Properties, located at 1400 Newport Center Drive, Suite 200, Newport Beach, California.  I am submitting this Declaration in support of the *Application of the Chapter 7 Trustee to: (1) Employ Real Estate Broker (Berkshire Hathaway HomeServices California Properties) and Agent Clarence Yoshikane Pursuant to 11 U.S.C. §§ 327 and 328; and (2) Allow Agent an Administrative Claim for Out-of-Pocket Expenses* ("Application").  Any capitalized terms not expressly defined herein shall have the meanings set forth in the Application.

2.      I have advised the Trustee that the current fair market value of the Property is approximately $799,900, but may be higher once all trash has been removed and the Property has been thoroughly cleaned.

3.      The Broker and I are qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Estate's interest in the Property.  A true and correct copy of the Listing Agreement is attached as **Exhibit 1**.  A true and correct copy of my profile is attached as **Exhibit 2**.

4.      On behalf of the Broker, I have agreed to accept employment on the terms and conditions set forth in the Application.  The total commission for the Property is six percent (6%).  The commission will be shared with the buyer's broker and will be paid from the sale proceeds through escrow.

5.      I have personally inspected the Property.  The residence and garage are completely filled with trash which has been there for more than a year.  Therefore, the Property needs extensive trash removal and interior cleaning ("Services").  I believe the Services are necessary to maximize the value of the Property for the benefit of the Estate.

**Golden Goodrich LLp**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Due to the lack of funds in the Estate, I am willing to undertake and advance the cost of such Services, up to $15,000, on condition that I be allowed an administrative claim in the Case.  Upon completion of the Services, I will submit my out-of-pocket expenses to the Trustee for review and approval.

6.    I am employed by the Trustee in other unrelated cases.

7.    To the best of my knowledge, except as provided above, the Broker and I:

a.    have no connection with the Debtor, the Debtor's principal, insiders, creditors, the Trustee, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

b.    are not creditors, equity security holders or insiders of the Debtor;

c.    are not and were not, within two (2) years before the date of the filing of the petition herein, directors, officers or employees of the Debtor;

d.    do not represent an individual or entity which holds an interest adverse to the Estate;

e.    are not related to the United States Trustee or to a bankruptcy judge in the Central District of California;

f.    are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

g.    have no fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling broker, as provided in the Listing Agreement; and

//
//
//

Golden Goodrich LLp
2070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

4862-3471-1971.1

EMPLOYMENT APPLICATION

Exhibit 2, Page 40

1    h.    will not receive a retainer in this case.

2    I declare under penalty of perjury that the foregoing is true and correct.

3    Executed on this _____ day of February, 2024, at Newport Beach, California.

4

5    _____

6    Clarence Yoshikane

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Golden Goodrich LLp
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

4862-3471-1971.1                        13                        EMPLOYMENT APPLICATION

# Exhibit 1

# DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

Case No. 8:22-bk-11331-MH    APN: 614-202-48

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date _____

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant  Weneta M.A. Kosmala, Ch 7 Trustee for the Estate of: Stacy Odine Corban    Date _____

Agent _____ Berkshire Hathaway HomeServices CA Properties _____ DRE Lic. # ___00801398___
    Real Estate Broker (Firm)

By _____ Clarence Yoshikane  DRE Lic. # ___00801398___ Date 12/19/23
    (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)



Exhibit 2, Page 43

CIVIL CODE SECTIONS 2079.24 (THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that principal by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17**(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

| | | |
|---|---|---|
| Seller's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent) | | |
| Seller's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent) | | |
| Buyer's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent) | | |
| Buyer's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent) | | |

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

2079.18 (Repealed pursuant to AB-1289)

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

AD REVISED 12/21 (PAGE 2 OF 2)





**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Exhibit 2, Page 44

CALIFORNIA
ASSOCIATION
OF REALTORS®

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller | Weneta M.A. Kosmala, Ch 7 Trustee | Date |
| Seller | | Date |
| Buyer | | Date |
| Buyer | | Date |
| Buyer's Brokerage Firm | DRE Lic # | Date |
| By | DRE Lic # | Date |
| Seller's Brokerage Firm Berkshire Hathaway HomeServices CA Properties | DRE Lic # 01317331 | Date |
| By | Clarence Yoshikane   DRE Lic # 00801398 | Date 12/19/23 |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Exhibit 2, Page 45



# RESIDENTIAL LISTING AGREEMENT
## (Exclusive Authorization and Right to Sell)
### (C.A.R. Form RLA, Revised 6/21)

CALIFORNIA
ASSOCIATION
OF REALTORS®

**Date Prepared:** February 1, 2024

1. **EXCLUSIVE RIGHT TO SELL:** Wendy a MA. Kosm al iCh 7 Tru st ee ("Seller")
hereby employs and grants Berkshire Hathaway HomeServices CA Properties ("Broker")
beginning (date) February 1, 2024 and ending at 11:59 P.M. on (date) August 1, 2024 ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as ... 225.96 Kil St ree t , situated in Lake Forest (City),
Orange (County), California, 9263f .4 619 (Zip Code), Assessor's Parcel No. 614-202-48 ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. form PLA) for additional terms.

   Case No. 8:22-bk-11331-MH    APN: 614-202-48

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: Seven Hundred Seventy-Seven Thousand Nine Hundred
   Dollars ($ 799,900 ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ 6.00 percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____
   AND _____ , as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      ~~OR (2) If within ____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.~~
      ~~OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.~~
   ~~B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lessor of one half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.~~
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ 3.00 percent of the purchase price, or ☐ $ _____
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (I) Broker is not entitled to compensation under this Agreement; and (II) Broker is not obligated to represent Seller in such transaction.

© 2021, California Association of REALTORS®, Inc.

**RLA REVISED 6/21 (PAGE 1 OF 5)**

Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660    Phone: (555)555-5555    Fax: 9496407429    BK / Listing
Jennifer Toyama    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Exhibit 2, Page 46

Property Address: ..., ..., .......    Date: February 1, 2024
22596 Killy St, Lake Forest, CA 92630-4619

**4.    A.    ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.

ADDITIONAL ITEMS EXCLUDED: _____

ADDITIONAL ITEMS INCLUDED: _____ .

Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.    (1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other

**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other

Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.    MULTIPLE LISTING SERVICE:**

**A.    WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**B.    WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

**C.    WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by paragraph 7 or by the MLS, Property will be listed with the MLS(s) specified above.

**6.    BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**

**A.    EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

**B.    IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**C.    REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**D.    NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

Seller's Initials _____ / _____    Broker's/Agent's Initials _____ / _____

**7.    PUBLIC MARKETING OF PROPERTY:**

**A.    CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.

**B.    PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i) Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.

**C.    "COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.

**D.    Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
**(1)**    Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date)

Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    BK / Listing

Exhibit 2, Page 47

Property Address: _____, _____, __, _____    22596 Killy St, Lake Forest, CA 92630-4619

OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

E. **Whether 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

F. ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** Paragraphs 7A (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

8. **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

A. **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

B. **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands **(i)** that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other Internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.
☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

~~9. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.~~

10. **BROKER'S AND SELLER'S DUTIES:**

A. **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in 10D as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

B. **Presentation of Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

C. **Buyer Supplemental Offer Letters (Buyer Letters):**

(1) Paragraph 8 of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.

(2) **(A)** Seller instructs Broker **not** to present Buyer Letters, whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR **(B)** ☐ Seller instructs Broker **to** present Buyer Letters. Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

D. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

E. **Investigations and Reports:** Seller agrees, within **5 (or _____) Days** of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____.
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

~~F. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.~~

**RLA REVISED 6/21 (PAGE 3 OF 5)**                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    BK / Listing

Exhibit 2, Page 48

Property Address: ........, ........ .....
22596 Killy St, Lake Forest, CA 92630-1619

**11. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**12. AGENCY RELATIONSHIPS:**

    **A.** **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

    **B.** **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

    **C.** **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

    **D.** **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

    **E.** **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**14. PHOTOGRAPHS AND INTERNET ADVERTISING:**

    **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

    **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**15. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

    **A.** Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

    **B.** **TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 22A.

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
    ☐ Trust Advisory (C.A.R. Form TA)
    ☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

    PROPERTY TO BE SOLD IN "AS-IS", "WHERE-IS" CONDITION WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESSED OR IMPLIED. PEST CONTROL/TERMITE INSPECTION REPORT AND ANY CORRECTIVE WORK WILL NOT BE PROVIDED, COMPLETED BY NOR PAID FOR BY SELLER.

    TRUSTEE'S ADDENDUM TO EXCLUSIVE AND RIGHT TO SELL IS INCORPORATED HEREIN IN ITS ENTIRETY.

**RLA REVISED 6/21 (PAGE 4 OF 5)**　　　　　Seller's Initials _____ / _____

Exhibit 2, Page 49

Property Address: _____  22596 Kitty St, Lake Forest, CA 92630-4619

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

~~22. DISPUTE RESOLUTION:~~

~~A. MEDIATION. Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.~~

**B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

**C. ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**23. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**24. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

APN: 614-202-18    Case No. 8:22-bk-11331-MH

Seller _____    Date _____
Weneta M.A. Kosmala, Ch 7 Trustee for the Estate of: Stacy Odine Corban

Address _____  City _____  State ____  Zip _____

Telephone _____  Fax _____  E-mail _____

Seller _____    Date _____

Address _____  City _____  State ____  Zip _____

Telephone _____  Fax _____  E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm)  Berkshire Hathaway HomeServices CA Properties    DRE Lic. #  01317331
Address  1400 Newport Center Drive, Suite 200    City  Newport Beach    State  CA  Zip  92660

By _____  Tel.  714.606.5765  E-mail Clarence.Yoshikane@gmail.com DRE Lic.#  00801398  Date 12/19/23
    Clarence Yoshikane

By _____  Tel. _____  E-mail _____  DRE Lic.# _____  Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2021 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 6/21 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    BK/ Listing

Exhibit 2, Page 50

## ADDENDUM TO
## EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL

In reference to the real property known as: **22596 Killy St, Lake Forest, CA 92630-4619, County of Orange, AP # 614-202-48, (the "property").**

The undersigned hereby agree to this addendum as follows:

1.      The parties acknowledge that this listing agreement and any agreement relating to the Property are not binding (including the entering into of a purchase agreement) until Bankruptcy Court approval.  The parties acknowledge that the Bankruptcy Court may after approval of this agreement later reduce commissions agreed to.

2.      Broker agrees to extensively market the Property through internet real estate websites and multiple listing services.

3.      The Trustee shall have the right to sell the Property to anyone who, prior to the date of entering into this agreement, has expressed an interest in purchasing the Property, and Broker shall not be entitled to a commission on such a sale.

    The Trustee shall further have the right at any time to sell the estate's interest in the Property to the Debtor, **Stacy Odine Corban, Case No. 8:22-bk-11331-MH.**

4.      A commission is not earned until court approval of a purchase agreement is obtained and escrow is closed.

5.      All disputes between Broker and Trustee or regarding sale of the property shall be resolved in the U.S. Bankruptcy Court, Central District of California, Santa Ana Division.

6.      There shall be no claim by broker for damages of any kind against **Weneta M. A. Kosmala**, or against the **Law Offices of Weneta M.A. Kosmala**. Any claim for damages by broker as it relates to the listing or sale herein shall only be against the Bankruptcy Estate of **Stacy Odine Corban, Case No. 8:22-bk-11331-MH.**



7.    Broker agrees that any previous listing agreements with regard to this Property are Null & Void.

The within agreement, upon its execution of both parties, is herewith made an integral part of the employment of Broker relating to the Property herein and the aforementioned Agreement of Sale.

**DATE:** 12/19/23

**BROKER**    _____
Clarence Yoshikane, Trustee's Agent

BRE # 00801398
714.606.5765, Direct Line
Clarence.Yoshikane@gmail.com

**DATE:**

**BANKRUPTCY TRUSTEE**_____
Weneta M. A. Kosmala, Chapter 7 Trustee
for the Estate of Stacy Odine Corban, Case No.
8:22-bk-11331-MH and not in her individual
capacity or as a member of the Law Offices of
Weneta M. A. Kosmala



# Exhibit 2

**Real Estate Sales Executive**
**Asset Management**
**Bankruptcy Specialist**
**Receivership Specialist**
**Short-Sale Specialist**
**Probate Specialist**
**CA BRE License #**
**00801398 714.606.5765,**
**Direct Line**

# Clarence Yoshikane

---

**Experience**                 **Residential & Commercial Real Estate Sales**

**July 23, 2020 to Present**
**Berkshire Hathaway HomeServices California**
**Properties**
Servicing California (Nationwide & International Network)

**December 6, 2018 to July 22, 2020**
**Coldwell Banker Real Estate**
Servicing California (Nationwide & International Network)

**April 1, 2018 to December 5, 2018**
**Pacific Sotheby's International Realty (Formerly**
**HOM / Sotheby's International Realty)**
Servicing California (Nationwide & International Network)

**September 12, 2016 through March 31, 2018**
**HOM / Sotheby's International Realty**

Servicing California (Nationwide & International Network)

**Fall 2013 through September 11, 2016**
**BHHS / Berkshire Hathaway**
**HomeServices California Properties (Formerly**
**Pru CA Realty)**
Servicing California (Nationwide Network)

**1989 through Fall 2013**
**Prudential California Realty**
Servicing California (Nationwide Network)

**1980 through 1989**
**Merrill Lynch Realty**

Exhibit 2, Page 54

**US Bankruptcy Court, State Court Receivership, & Probate and Short Sale Specialist**

**Orange, Los Angeles, Riverside, San Bernardino & San Diego Counties**

**Expert Handling of Occupied, Vacant & Tenant Occupied Properties Licensed in California since 1980**

**Consistently Top Producer – Top 5% of Agents in Company**

**Assessed damages, obtained bids for repairs, Listed & Sold – US Bankruptcy Court, State Court Receivership, Probate Court, REO, Bank Owned & Corporate Owned Properties**

**Developed, Owned & Managed – owner & non-owner occupied properties in Orange & Los Angeles Counties**

| | |
|---|---|
| **Professional Associations** | **Newport Beach Association of Realtors (NBAOR)**<br>**California Regional Multiple Listing Service (CRMLS)**<br>**National Association of Realtors**<br>**California Association of Realtors** |

--

**Clarence Yoshikane**
**Sales Executive**
**Asset Management**
**Bankruptcy Specialist**
**CA DRE License # 00801398**

**Berkshire Hathaway HomeServices**

**California Properties**

**1400 Newport Center Drive, Suite**

**200, Newport Beach, CA 92660**

**714.606.5765, Direct Line**

**clarence.yoshikane@gmail.com**

**www.Yoshikane-Toyama.com**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3070 Bristol Street, Suite 640, Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*):  **APPLICATION OF THE CHAPTER 7 TRUSTEE FOR AUTHORIZATION TO: (1) EMPLOY REAL ESTATE BROKER (BERKSHIRE HATHAWAY HOMESERVICES CALIFORNIA PROPERTIES) AND AGENT CLARENCE YOSHIKANE PURSUANT TO 11 U.S.C. §§ 327 AND 328; AND (2) ALLOW AGENT AN ADMINISTRATIVE CLAIM FOR OUT-OF-POCKET EXPENSES; DECLARATIONS OF WENETA M.A. KOSMALA AND CLARENCE YOSHIKANE IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **March 8, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Ryan W Beall    rbeall@go2.law, kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
Benjamin Heston    bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
Weneta M.A. Kosmala (TR)    ecf.alert+Kosmala@titlexi.com,
wkosmala@txitrustee.com;dmf@txitrustee.com;sdk@txitrustee.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.**    On (*date*) **March 8, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Stacy Odine Corban
22596 Killy St
Lake Forest, CA 92630-4619
**DEBTOR**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 8, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Clarence Yoshikane (Berkshire Hathaway HomeServices California Properties: clarence.yoshikane@gmail.com
Jennifer Toyama (Berkshire Hathaway HomeServices California Properties:: j_toyama@verizon.net

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 8, 2024 | David M. Fitzgerald | *David M. Fitzgerald* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
0.0

**F 9013-3.1.PROOF.SERVICE**
Exhibit 2, Page 56

1  **GOLDEN GOODRICH LLP**
2  Jeffrey I. Golden, State Bar No. 133040
   jgolden@go2.law
   Ryan W. Beall, State Bar No. 313774
3  rbeall@go2.law
   3070 Bristol Street, Suite 640
4  Costa Mesa, California 92626
   Telephone    714-966-1000
5  Facsimile    714-966-1002

6  Attorneys for Chapter 7 Trustee
   Weneta M.A. Kosmala
7

FILED & ENTERED

MAR 29 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY deramus  DEPUTY CLERK

8              **UNITED STATES BANKRUPTCY COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10  In re                                    | Case No. 8:23-bk-11139-TA

11  STACY ODINE CORBAN,                       | Chapter 7

12              Debtor.                       | **ORDER APPROVING APPLICATION OF
                                              | THE CHAPTER 7 TRUSTEE FOR
13                                            | AUTHORIZATION TO: (1) EMPLOY REAL
                                              | ESTATE BROKER (BERKSHIRE
14                                            | HATHAWAY HOMESERVICES
                                              | CALIFORNIA PROPERTIES) AND AGENT
15                                            | CLARENCE YOSHIKANE PURSUANT TO
                                              | 11 U.S.C. §§ 327 AND 328; AND
16                                            | (2) ALLOW AGENT AN ADMINISTRATIVE
                                              | CLAIM FOR OUT-OF-POCKET
17                                            | EXPENSES**

18                                            | **[22596 Killy Street, Lake Forest,
                                              | California 92630]**
19
                                              | [No Hearing Required Pursuant to Local
20                                            | Bankruptcy Rule 2014-1(b)(1)]

21       The Court having read and considered the *Application of the Chapter 7 Trustee for*

22  *Authorization to: (1) Employ Real Estate Broker (Berkshire Hathaway HomeServices*

23  *California Properties) and Agent Clarence Yoshikane Pursuant to 11 U.S.C. §§ 327 and*

24  *328; and (2) Allow Agent an Administrative Claim for Out-of-Pocket Expenses* filed on

25  March 8, 2024, as Docket #44 ("Application")[1] and with good cause shown,

26

27  _____

28       [1] All capitalized terms have the same meaning or definition as the capitalized terms in the Application.

**IT IS ORDERED:**

1.    The Application is approved.

2.    The Trustee is authorized to employ the Broker and the Agent as an expense of the Estate pursuant to 11 U.S.C. §§ 327 and 328, to market and sell the Estate's interest in the Property upon the terms and conditions set forth in the Application and in the Listing Agreement attached as Exhibit 1 to the Application, and to execute the Listing Agreement and any and all other ancillary documents necessary to list the Property for sale.

3.    The Agent is allowed an administrative claim in the Case of up to $15,000, which can be paid through escrow from the proceeds of sale of the Property.

###

Date: March 29, 2024

*Theodor C. Albert*

Theodor C. Albert
United States Bankruptcy Judge

Golden Goodrich LLp
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

2

# Exhibit 3

# BZB LOCK & KEY

## LOCKSMITH SERVICE

1439 W. Chapman Ave. #79
Orange, CA 92868

## 714-904-1733

bzblocksmith@gmail.com • www.bzblocksmith.com

**INVOICE**

**1931**

| NAME | CORBAN Stacy | | DATE 5/2/24 |
|---|---|---|---|
| ADDRESS | 22596 Killy St. | PHONE # | |
| CITY | Lake Forest, CA | ZIP | OFFICE # |
| YEAR | MAKE | MODEL | DRIVER LICENSE | EMAIL |

| QTY | JOB DESCRIPTION | AMOUNT | PRICE |
|---|---|---|---|
| | **TRIP CHARGE** | ▬ | 85⁰⁰ |
| | **LABOR + INSTALLATION** Boarding | 255⁰⁰ | |
| | **LOCKOUT SERVICE** Bolt & knob | 175⁰⁰ | |
| 3 | **REKEY / LOCK SERVICE** (3 X 45) | 135⁰⁰ | |

❏ ZELLE
Zelle

❏ CASH

*ALL PARTS GUARANTEED FOR 90 DAYS UNLESS SPECIFIED.
* Not include car keys/remotes, and rekeys.

AUTHORIZATION FOR SECURITY/ EMERGENCY SERVICES
I hereby certify that I have the authority to order the lock, key or security work designated above. Further, I agree to absolve the locksmith who bears this authorization from any and all claims arising from the performance of such work.
All parts & hardware property of BZB Lock & Key Inc. Until invoice is paid in full.
2% finance charge applied to overdue invoices. By this signature I authorize the labor, parts, hardware, and prices to work. $40 fee will be applied on bounced checks.

❏ CHECK

❏ C.CARD  23⁵⁰

Thank You For Your Business

Signature X _____ Date _____

**TOTAL : $ 673⁰⁰**

# BZB Lock & Key Inc.

(714) 904-1733
bzblocksmith.com

May 2, 2024
11:14 AM
Netanel

Receipt: BgaP
Authorization: 03425B

CHASE VISA
AID A0 00 00 00 03 10 10

| Custom Amount | $673.00 |
|---|---|

| Total | $673.00 |
|---|---|
| Visa 1890 (Contactless) | $673.00 |

THANK YOU FOR YOUR
BUSINESS !

** no warrenty or refunds on
automotive keys/remotes/
service**

**221**

**CLARENCE YOSHIKANE**
714-606-5765

Corban

Kosmala Ch7       DATE 5/16/24

90-7162/3222

PAY TO THE
ORDER OF   Jam Moving & Delivery Services   $11,300.00

Eleven thousand three hundred & 00/100   DOLLARS

**CHASE**
**JPMorgan Chase Bank, N.A.**
www.Chase.com

MEMO  22596 Killy

|:322271627|:   389830081||022|

MP

CORBAN

90-7162/3222

**222**

**CLARENCE YOSHIKANE**
714-606-5765

KOSUALACHAT  DATE 5/8/24

PAY TO THE
ORDER OF ___ Jm Moving & Delivery Services ___ $ 720.00

Seven Hundred Twenty ε 00/100 ___ DOLLARS

Security Features
Included
Details on Back

**CHASE** 🔵
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO 225 96 Killy

⑈322271627⑈  389830081⑈0222

MP

Exhibit 3, Page 62

Exhibit 4



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

Berkshire Hathaway HomeService
1400 Newport Center Dr #200
Newport Beach, CA 92660

Attn: Jennifer Toyama

Title Officer: Michael Chediak--So
email: tu07@ltic.com
Phone No.: (818) 252-6050 x 6050
Fax No.: (818) 252-4549
File No.: 122074862

Your Reference No:                                22596 KILLY ST

Property Address:   22596 Killy Street, City of Lake Forest, California

## UPDATED PRELIMINARY REPORT

Dated as of May 24, 2024 at 7:30 a.m.

In response to the application for a policy of title insurance referenced herein, Lawyers Title Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitation on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

The policy(s) of title insurance to be issued hereunder will be policy(s) of Commonwealth Land Title Insurance Company.

*Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered. It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.*

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

File No:  122074862

# SCHEDULE A

The form of policy of title insurance contemplated by this report is:

CLTA/ALTA 2021 Homeowner's Policy of Title Insurance
ALTA Loan 2021

The estate or interest in the land hereinafter described or referred to covered by this report is:

A Fee

Title to said estate or interest at the date hereof is vested in:

Daniel W. Corban and Stacy Odine Corban, Husband and Wife as Community Property with Right of Survivorship, subject to item No. 1 of Schedule B,

subject to proceedings pending in the bankruptcy court where a petition for relief was filed.

Name of Debtor:  Stacy Odine Corban
Date of Filing:  06/02/2023
U.S. District Court:  Central District of California (Santa Ana)
Case No:  8:23-bk-11139-MH

The land referred to herein is situated in the County of Orange, State of California, and is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

File No:  122074862

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 71 OF TRACT NO. 7428, IN THE CITY OF LAKE FOREST, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 295, PAGE(S) 18-23 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN DEED RECORDED IN BOOK 10379, PAGE 65 OFFICIAL RECORDS OF SAID ORANGE COUNTY.

ASSESSOR'S PARCEL NUMBER: 614-202-48

File No:  122074862

# SCHEDULE B

At the date hereof Exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2024-2025.

B.  Intentionally deleted

C.  Intentionally Deleted

D.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

1.  Water rights, claims or title to water, whether or not disclosed by the Public Records.

2.  All easements, offers and dedications as shown on the official map

Tract of:                            7428

3.  Easement(s) for the purpose(s) shown below and rights incidental thereto as provided in a document:

Purpose:                        Perpetual air or flight easement, also referred to as "avigation rights"
Recording Date:                March 17, 1964
Recording No.:                Book 6965, Page 721, of Official Records
Affects:                        said land more particularly described therein

4.  Declaration of covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the below document, which, among other things, may contain or provide for easements; assessments, liens and the subordination thereof; said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value:

Recording Date:                October 29, 1970
Recording No.:                Book 9446, Page 85, of Official Records

Said instrument also provides for the levy of assessments, the lien of which is stated to be subordinate to the lien of a first mortgage or first deed of trust made in good faith and for value.

Modification(s) of said covenants, conditions and restrictions

Recording Date:                October 29, 1970
Recording No:                Book 9448, Page 472, of Official Records

File No: 122074862

Modification(s) of said covenants, conditions and restrictions

Recording Date:          April 15, 1971
Recording No.:           Book 9607, Page 424, of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:          April 14, 1972
Recording No.:           Book 10083, Page 161, of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:          March 26, 1973
Recording No.:           Book 10612, Page 46, of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:          September 15, 1975
Recording No.:           Book 11510, Page 133, of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:          November 16, 1978
Recording No.:           Book 12927, Page 261, of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:          November 28, 1978
Recording No.:           Book 12939, Page 1490, of Official Records

5.   Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document:

Granted To:              Southern California Edison Company
Purpose:                 Public utilities
Recording Date:          May 9, 1972
Recording No:            Book 10118, Page 43, of Official Records
Affects:                 said land more particularly described therein

6.   The Land described herein is included within a project area of the Redevelopment Agency shown
     below, and that proceedings for the redevelopment of said project have been instituted under the
     Redevelopment Law (such redevelopment to proceed only after the adoption of the Redevelopment
     Plan) as disclosed by a document.

Redevelopment Agency:    Lake Forest Redevelopment Agency
Recording Date:          June 27, 1996
Recording No.:           96-327553, of Official Records

File No:  122074862

7.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $417,302.00 |
| Dated: | June 29, 2009 |
| Trustor/Grantor: | Daniel W. Corban and Stacy Ondine Corban, Husband and Wife as Community Property with Right of Survivorship |
| Trustee: | ReconTrust Company, N.A. |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Bank of America, N.A., its successors and/or assigns |
| Loan No.: | 209996606 |
| Recording Date: | July 2, 2009 |
| Recording No: | 2009000350905, of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Executed by: | Daniel W. Corban and Stacy Ondine Corban and Bank of America, N.A., for itself or as successor by Merger to BAC Home Loans Servicing, LP |
| Recording Date: | February 1, 2013 |
| Recording No.: | 2013000069701, of Official Records |

Assignment of the beneficial interest under said deed of trust which names:

| | |
|---|---|
| Assignee: | Bank of America N.A |
| Recording Date: | May 2, 2013 |
| Recording No.: | 2013000265596, of Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Clear Recon Corp. |
| Recording Date: | September 8, 2015 |
| Recording No.: | 2015000461140, of Official Records |

Notice of Default under the terms of said trust deed

| | |
|---|---|
| Executed By: | Clear Recon Corp. |
| Recording Date: | September 8, 2015 |
| Recording No.: | 2015000461141, of Official Records |

A Notice of Trustee's Sale under said deed of trust

| | |
|---|---|
| Executed By: | Clear Recon Corp. |
| Time and Place of Sale: | Auction.Com, DoubleTree by Hilton Hotel Anaheim - Orange County, 100 The City Drive, Orange, CA 92868, 8/8/2022 at 9:00 AM |
| Recording Date: | May 27, 2022 |
| Recording No.: | 2022-195742, of Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Clear Recon Corp. |
| Time and Place of Sale: | Auction.Com, DoubleTree by Hilton Hotel Anaheim - Orange County, 100 The City Drive, Orange, CA 92868, 6/2/2023 at 9:00 AM |
| Recording Date: | April 11, 2023 |
| Recording No: | 2023-82437 |

File No:  122074862

8.  A deed of trust to secure an indebtedness in the amount shown below, and any other obligations
    secured thereby

    Amount:                     $103,630.40
    Dated:                      March 16, 2011
    Trustor/Grantor:            Daniel W. Corban and Stacy Ondine Corban
    Trustee:                    Recontrust Company, N.A
    Beneficiary:                Secretary of Housing and Urban Development
    Loan No.:                   Not Set Out
    Recording Date:             April 5, 2012
    Recording No:               2012000193194, of Official Records

9.  Notice of delinquent assessments and lien payable to the Owners' Association pursuant to the
    declaration herein.

    Amount:                     $4,902.00
    Owners Association:         Lake Forest II Master Homeowners Association
    Recording Date:             October 15, 2014
    Recording No:               2014000418100, of Official Records

10. An abstract of judgment for the amount shown below and any other amounts due:

    Amount:                     $21,648.00
    Debtor:                     Daniel W. Corban
    Creditor:                   Lake Forest II Master Homeowners Association, A California Non-
                                Profit Corporation
    Date Entered:               January 15, 2019
    County:                     Orange
    Court:                      Superior Court of California
    Case No.:                   30-2018-00997153
    Recording Date:             August 9, 2021
    Recording No:               2021000499099, of Official Records

11. Intentionally Deleted

12. Intentionally Deleted

13. Furnish proof satisfactory to the Company that the proposed conveyance/mortgage necessary for the
    proposed insured transaction complies with all requirements of the United States Bankruptcy Code for
    the following person or entity:

    Name of possible debtor:        Stacy Odine Corban

14.  The effect of a Deed as set forth below:

| | |
|---|---|
| Grantor: | Daniel W. Corban, a Married Man, Spouse of the Grantee herein |
| Grantee: | Stacy Odine Corban, a Married Woman as her sole and separate property |
| Dated: | October 31, 2022 |
| Recording Date: | December 4, 2023 |
| Recording No.: | 2023-299579, of Official Records |

The Company requires that an affidavit (attached) be completed and executed by the above grantor and that said affidavit be acknowledged before a notary who is an employee of the title or escrow Company and then submitted to the Title Officer for review.

The Company further requires a statement of information from the above grantors in order to complete this report, based on the effect of documents, proceedings, liens, decrees, or other matters which do not specifically describe said Land, but which if any do exist, may affect the title or impose liens or encumbrances thereon.

END OF SCHEDULE B EXCEPTIONS

PLEASE REFER TO THE "NOTES AND REQUIREMENTS SECTION" WHICH FOLLOWS FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION

File No:  122074862

# REQUIREMENTS SECTION:

Req. No. 1:    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s):            All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

Req. No. 2:    Satisfactory evidence must be furnished from the secretary or other duly qualified officer of the Association showing that all assessments and fees, including special assessments or payments due to others, such as master associations, are paid in full through the date of closing.

File No:  122074862

# INFORMATIONAL NOTES SECTION

**Note No. 1:**  The information on the attached plat is provided for your convenience as a guide to the general location of the subject property.  The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

**Note No. 2:**  California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed.  All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

For wiring Instructions please contact your Title Officer or Title Company Escrow officer.

**Note No. 3:**  Lawyers Title is a division of Commonwealth Land Title Insurance Company. The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

**Note No. 4:**  Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

**Note No. 5:**  None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

**Note No. 6:**  The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land: Single Family Residence in a Planned Unit Development
Known as: 22596 Killy Street, City of Lake Forest, California.

File No: 122074862

**Note No. 7:** The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

| | |
|---|---|
| Grantor: | Daniel W. Corban, a Married Man, Spouse of the Grantee herein |
| Grantee: | Stacy Odine Corban, a Married Woman as her sole and separate property |
| Dated: | October 31, 2022 |
| Recording Date: | December 4, 2023 |
| Recording No.: | 2023-299579, of Official Records |

**Note No. 8:** The Company requires current beneficiary demands prior to closing. If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

(a) If this Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. This hold will be in addition to the verbal hold the lender may have stipulated.

(b) If this Company cannot obtain a verbal update on the demand, we will either pay off the expired demand, or wait for the amended demand, at our discretion.

(c) All payoff figures are verified at closing. If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

**Note No. 9:** Association Assessments are periodically due from holders of title to said Land to the Homeowner's Association and transfer fees may be due whenever there is a transfer of title of any of the units. In order to ascertain seller's/buyer's association assessments and transfer fee requirements prior to transfer of a unit, Escrow companies are requested to contact said Homeowner's Association.

**Note No. 10:** Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

**Note No. 11:** Property taxes, including any personal property taxes and any assessments collected with taxes, are paid. For proration purposes the amounts were:

| | |
|---|---|
| Tax Identification No.: | 614-202-48 |
| Fiscal Year: | 2023-2024 |
| 1st Installment: | $2,769.22, Paid |
| 2nd Installment: | $ 2,769.22, Paid |
| Homeowners Exemption: | Not Set Out |
| Code Area: | 30-015 |

Processor: ZK
Date Typed: June 4, 2024

## ATTACHMENT ONE

(Rev 11-04-22 (CA))

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY — 1990 (11-09-18)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims: (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)]


CALIFORNIA LAND TITLE ASSOCIATION
STANDARD COVERAGE OWNER'S POLICY (02-04-22)

EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.      any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.      the occupancy, use, or enjoyment of the Land;
        ii.     the character, dimensions, or location of any improvement on the Land;
        iii.    the subdivision of land; or
        iv.     environmental remediation or protection.
    b.      any governmental forfeiture, police, regulatory, or national security power.
    c.      the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.      created, suffered, assumed, or agreed to by the Insured Claimant;
    b.      not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.      resulting in no loss or damage to the Insured Claimant;
    d.      attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.      resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.      fraudulent conveyance or fraudulent transfer;

    b.      voidable transfer under the Uniform Voidable Transactions Act; or
    c.      preferential transfer:
        i.      to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.      for any other reason not stated in Covered Risk 9.b.

5.      Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.      Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.      Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

## PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

## PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)

File No:  122074862

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i.  the occupancy, use, or enjoyment of the Land;
    ii.  the character, dimensions, or location of any improvement on the Land;
    iii.  the subdivision of land;  or
    iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, or regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.

2.  Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.

3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by You;
    b.  not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
    c.  resulting in no loss or damage to You;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
    e.  resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.

4.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
    b.  in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
    Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.

5.  The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.  to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 30.

7.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

8.  Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.

9.  Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.

10.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

·    For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.    Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   a.    building;
   b.    zoning;
   c.    land use;
   d.    improvements on the Land;
   e.    land division; and
   f.    environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.    The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.    The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4.    Risks:

   a.    that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b.    that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c.    that result in no loss to You; or

d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

6.  Lack of a right:

a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
b.  in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

·  For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## ALTA OWNER'S POLICY (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
i.  the occupancy, use, or enjoyment of the Land;
ii.  the character, dimensions, or location of any improvement on the Land;
iii.  the subdivision of land; or
iv.  environmental remediation or protection.
b.  any governmental forfeiture, police, regulatory, or national security power.

c.    the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.

Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2.    Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3.    Any defect, lien, encumbrance, adverse claim, or other matter:
a.    created, suffered, assumed, or agreed to by the Insured Claimant;
b.    not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
c.    resulting in no loss or damage to the Insured Claimant;
d.    attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
e.    resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
a.    fraudulent conveyance or fraudulent transfer;
b.    voidable transfer under the Uniform Voidable Transactions Act; or
c.    preferential transfer:
    i.    to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
    ii.    for any other reason not stated in Covered Risk 9.b.

5.    Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.    Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.    Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.    (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.

3.      Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.      Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.       (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.      Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.      Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.       (a)       Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)       the occupancy, use, or enjoyment of the Land;

    (ii)      the character, dimensions, or location of any improvement erected on the Land;

    (iii)     the subdivision of land; or

    (iv)      environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b)       Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.      Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.      Defects, liens, encumbrances, adverse claims, or other matters

    (a)      created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)      not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)      resulting in no loss or damage to the Insured Claimant;

    (d)      attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

(e)     resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.     Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a)     a fraudulent conveyance or fraudulent transfer; or

(b)     a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.     Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.     (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.     Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3.     Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.     Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.     (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.     Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.     Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

File No: 122074862



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.   As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below: consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| FNF Underwritten Title Company | Underwritten by FNF Underwriters |
|---|---|
| CTC – Chicago Title Company | CTIC – Chicago Title Insurance Company |
| CLTC - Commonwealth Land Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

<u>Available Discounts</u>

DISASTER LOANS (CTIC, CLTIC, FNTIC)
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

MILITARY DISCOUNT RATE (CTIC, CLTIC, FNTIC)
Upon the Company being advised in writing and prior to the closing of the transaction that an active duty, honorably separated, or retired member of the United States Military or Military Reserves or National Guard is acquiring or selling an owner occupied one-to-four family property, the selling owner or acquiring buyer, as applicable, will be entitled to a discount equal to 15% of the otherwise applicable rates such party would be charged for title insurance policies.
Minimum charge: $425.00
The Company may require appropriate proof of eligibility from the parties to the transaction verifying they are entitled to the discount as described. No other discounts or special rates, or combination of discounts or special rates, shall be applicable.

CLTA Preliminary Report Form – Modified (11-17-06)

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
http://www.fbi.***gov***

*Internet Crime Complaint Center:*
http://www.ic3.gov

FIDELITY NATIONAL FINANCIAL
PRIVACY NOTICE

Effective December 1, 2023

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

Collection of Personal Information
FNF may collect the following categories of Personal Information:
• contact information (*e.g.*, name, address, phone number, email address);
• demographic information (*e.g.*, date of birth, gender, marital status);
• identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
• financial account information (*e.g.* loan or bank account information); and
• other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
• information we receive from you or your agent;
• information about your transactions with FNF, our affiliates, or others; and
• information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
• Internet Protocol (IP) address and operating system;
• browser version, language, and type;
• domain name system requests; and
• browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

Other Online Specifics
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

Use of Personal Information
FNF uses Personal Information for these main purposes:
• To provide products and services to you or in connection with a transaction involving you.
• To improve our products and services.

- To communicate with you about our affiliates' and others' products and services, jointly or independently.
- To provide reviews and testimonials about our services, with your consent.

When Information Is Disclosed

We may disclose your Personal Information and Browsing Information in the following circumstances:

- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to affiliated or nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to affiliated or nonaffiliated third parties with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above-described proceedings.

Security of Your Information

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

Choices With Your Information

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Connecticut Residents:  For additional information about your Connecticut consumer privacy rights, or to make a consumer privacy request, or to appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Colorado Residents: For additional information about your Colorado consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Nevada Residents: We are providing this notice pursuant to state law.  You may be placed on our internal Do Not Call List by calling FNF Privacy at (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. For further information concerning Nevada's telephone solicitation law, you may contact: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: aginquiries@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Utah Residents:  For additional information about your Utah consumer privacy rights, or to make a consumer privacy request, please call (888) 714-2710.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health

information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

<u>For Virginia Residents</u>: For additional information about your Virginia consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

## Information From Children

The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do <u>not</u> collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users

FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## Your Consent to this Privacy Notice; Notice Changes

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

## Accessing and Correcting Information; Contact Us

If you have questions or would like to correct your Personal Information, visit FNF's Privacy Inquiry Website or contact us by phone at (888) 714-2710, by email at privacy@fnf.com, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Copyright © 2023.                              Fidelity National Financial, Inc. All Rights Reserved.

FIDELITY NATIONAL FINANCIAL
CALIFORNIA PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This California Privacy Notice explains how we collect, use, and disclose Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights"). "Personal Information" means information that identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. If FNF has collected, used, or disclosed your Personal Information in relation to a job application or employment, independent contractor, officer, owner, or director relationship with FNF, FNF's practices are discussed in our Notice at Collection for Prospective Employees, available at *Prospective California Employees*.

Some subsidiaries maintain separate California Privacy Notices or privacy statements. If a subsidiary has a separate California Privacy Notice, it will be available on the subsidiary's website, and this California Privacy Notice does not apply.

Collection of categories of Personal Information:

In the preceding 12 months FNF has collected, and will continue to collect, the following categories of Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security
  number, driver's license number, state identification card, passport number, financial information, date of birth, or other similar identifiers;
- Characteristics of protected classifications under California or Federal law;
- Commercial information, including records of personal property, products or services purchased, or other
  purchasing or consuming histories;
- Internet or other electronic network activity information including, but not limited to browsing history on FNF websites and information regarding a Consumer's interaction with an FNF website;
- Geolocation data;
- Professional or employment information;
- Education Information.

This Personal Information is collected from the following sources:

- Information we receive from you on applications or other forms;
- Information about your transactions with FNF, our affiliates, or others;
- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these
  entities, or from internet service providers, data analytics providers, and social networks;
- Information from the use of our websites and mobile applications;
- Information we receive directly from you related to doing business with us.

This Personal Information is collected for the following business purposes:

- To provide products and services to you or in connection with a transaction involving you;
- To perform a contract between FNF and the Consumer;
- To improve our products and services;
- To comply with legal obligations;
- To protect against fraudulent or illegal activity;
- To communicate with you about FNF or our affiliates;
- To maintain an account with FNF or our affiliates;
- To provide, support, personalize, and develop our websites, products, and services;
- To provide reviews and testimonials about our services, with your consent;

- To directly market our products to consumers;
- As described to you when collecting your Personal Information or as otherwise set forth in the California
  Consumer Privacy Act.

Disclosures of Personal Information for a business purpose:

In the preceding 12 months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed  above for a business purpose. We may disclose Personal Information for a business purpose to the following categories of  third parties:

- FNF affiliates and subsidiaries;
- Non-affiliated third parties, with your prior consent;
- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;
- Service Providers and non-affiliated third parties such as internet service providers, data analytics providers, and social networks;
- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

Sale of Personal Information:
In the preceding 12 months, FNF has not sold or shared Personal Information. FNF does not sell or share Personal Information.

Retention Periods:
Due to the breadth and variety of data collected by FNF, it is not possible for us to provide you with a comprehensive list of timeframes during which we retain each category of Personal Information. FNF retains categories of information as reasonably necessary to satisfy the purpose for which we collect the information. This time period varies depending on the purpose for which we collected the information, the nature and frequency of our interactions and relationship with you, whether we have a legal basis to continue retaining the information, industry practices, the value and sensitivity of the information, and state and federal recordkeeping requirements.

Personal Information of minors:
FNF does not knowingly collect the Personal Information of minors. FNF does not sell or share the information of consumers under 16 years of age.

Sensitive Personal Information:
FNF does not use or disclose sensitive Personal Information for any purposes other than those specified in the California Consumer Privacy Act.

Right to know:
Consumers have a right to know about Personal Information collected, used, disclosed, shared, or sold, including the categories of such Personal Information, as well as the purpose for such collection, use, disclosure, sharing, or selling, categories of third parties to whom Personal Information is disclosed, shared or sold, and the specific pieces of Personal Information collected about the consumer.  Consumers have the right  to request FNF disclose what Personal Information it collected, used, and disclosed in the past 12 months, or since January 1, 2022.

Right to request deletion:
Consumers have a right to request the deletion of their Personal Information, subject to certain exceptions.

Right to Correct:
Consumers have the right to correct inaccurate Personal Information.

Right to non-discrimination:
Consumers have a right not to be discriminated against because of exercising their consumer privacy rights. We will not
discriminate against Consumers for exercising any of their California Privacy Rights.

Privacy Requests:

To exercise any of your California Privacy Rights, or if acting as an authorized agent on behalf of another individual, please visit *California Privacy Request*, call us Toll Free at 888-413-1748, or write to the address at the end of this notice.

Upon making a California Privacy Request, FNF will verify the consumer's identity by requiring an account, loan, escrow  number, or other identifying information from the consumer.

The above-rights are subject to any applicable rights and obligations including both Federal and California                                                                    exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements. A Consumer may use an Authorized Agent to submit any CCPA request. Authorized agents' requests will be processed like any other CCPA request, but FNF will also require the Consumer provide the agent's written permission to make the request and verify his or her identity with FNF.

<u>FNF website services for mortgage loans</u>:

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer  information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both  this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice describing  the categories, sources, and uses of your Personal Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information. FNF does not share Information  collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or  lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process  or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

<u>California Privacy Notice – Effective Date</u>:
This California Privacy Notice was last updated on December 1, 2023.

<u>Contact for more information</u>:

For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any                                              of                                                  your California Privacy Rights, please visit *California Privacy*, call Toll Free 888-413-1748, or contact us by mail at the below address.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Copyright © 2023.                                              Fidelity National Financial, Inc. All Rights Reserved.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted.
Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# Exhibit 5

Printed on Jun 6 2024 1:37 pm

# 8:23-bk-11139 - Stacy Odine Corban

### Central District of California
### Claims Register

Converted 08/28/2023

| | | |
|---|---|---|
| **Judge: Theodor Albert** | | **Chapter:** 7 |
| **Office:** Santa Ana | | **Last Date to file claims:** 01/23/2024 |
| **Trustee:** Weneta M.A. Kosmala (TR) | | **Last Date to file (Govt):** |

| **Total Number Of Claims: 4 | Case Filed: 06/02/2023** |
|---|
| **Total Amount Claimed\*** | $572,691.22 |
| **Total Amount Allowed\*** | |

\*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | **Claimed** | **Allowed** |
|---|---|---|
| **Secured** | $505,979.78 | |
| **Priority** | $0.00 | |
| **Administrative** | | |

| # ↓⁼ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|---|---|---|---|---|
| **4** | 05/10/2024 | INTERNAL REVENUE SERVICE | $39,711.44 | 06/06/2024 |
| **3** | 03/07/2024 | David Harris | $27,000.00 | 06/06/2024 |

Exhibit 5, Page 92

| # ↓≡ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|---|---|---|---|---|
| **2** | 06/22/2023 | BANK OF AMERICA, N.A. | $402,349.38 | 06/06/2024 |
| **1** | 06/05/2023 | U.S. Department of Housing and Urban Development | $103,630.40 | 06/06/2024 |

Exhibit 5, Page 93

# Exhibit 6



**CALIFORNIA ASSOCIATION OF REALTORS®**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. FORM RPA, 12/21)

Date Prepared: __May 20, 2024__

**1. OFFER:**
  **A.** THIS IS AN OFFER FROM _____ **GBKD Inc** _____ ("Buyer").
  **B.** THE PROPERTY to be acquired is __22596 Killy Street__ ....., situated
    in ___Lake Forest.___ (City), ___Orange___ ... (County), California, _92630-4619_ (Zip Code),
    Assessor's Parcel No(s). ___614-202-48___ ("Property").
    **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
  **C.** THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.
  **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.
**2. AGENCY:**
  **A.** DISCLOSURE: The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
  **B.** CONFIRMATION: The following agency relationships are hereby confirmed for this transaction.
    **Seller's Brokerage Firm** ___Berkshire Hathaway HomeServices CA Properties___ License Number ___01317331___
    Is the broker of (check one): ☐ the Seller; or ☒ both the Buyer and Seller (Dual Agent).
    **Seller's Agent** ___Clarence Yoshikane___ License Number ___00801398___
    Is (check one): ☐ the Seller's Agent. (Salesperson or broker associate); or ☒ both the Buyer's and Seller's Agent (Dual Agent).
    **Buyer's Brokerage Firm** _____ License Number _____
    Is the broker of (check one): ☐ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
    **Buyer's Agent** _____ License Number _____
    Is (check one): ☐ the Buyer's Agent. (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
  **C.** ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
  **D.** POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).
**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | **Purchase Price** | $   900,000 | ☐ All Cash |
| **B** | | **Close of Escrow (COE)** | ☒ within 30-days from Court Confirmation Hearing ☐ | |
| ~~C~~ | ~~32A~~ | ~~Expiration of Offer~~ | ~~3 calendar days after all Buyer Signature(s)~~ ~~or~~ _____ ~~(date),~~ ~~at 5PM or_____ ☐AM/ ☐PM~~ | |
| **D(1)** | 5A(1) | **Initial Deposit Amount** | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _____) business days after Acceptance by wire transfer OR ☐ |
| ~~D(2)~~ | ~~5A(2)~~ | ~~☐ Increased Deposit~~ ~~(Money placed into escrow after the Initial deposit. Use form DID at time increased deposit is made.)~~ | ~~$_____ ( _____ % of purchase price)~~ ~~(% number above is for calculation purposes and is not a contractual term)~~ | ~~Upon removal of all contingencies~~ ~~OR ☐ _____(date)~~ ~~OR ☐ _____~~ |
| ~~E(1)~~ | ~~5C(1)~~ | ~~Loan Amount(s):~~ ~~First~~ ~~Interest Rate~~ ~~Points~~ | ~~$_____ ( _____ % of purchase price)~~ ~~Fixed rate or ☐ Initial adjustable rate not to exceed_____ %~~ ~~Buyer to pay zero points or up to_____ % of the loan amount~~ | ~~Conventional or, if checked,~~ ~~☐ FHA ☐ VA~~ ~~(CAR Forms FVAC, HID attached)~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| | | ~~If FHA or VA checked, Deliver list of lender required repairs~~ | ~~17 (or_____) Days after Acceptance~~ | |
| ~~E(2)~~ | ~~5C(2)~~ | ~~Additional Financed Amount~~ ~~Interest Rate~~ ~~Points~~ | ~~$_____ ( _____ % of purchase price)~~ ~~Fixed rate or ☐ Initial adjustable rate not to exceed_____ %~~ ~~Buyer to pay zero points or up to_____ % of the loan amount~~ | ~~Conventional or, if checked,~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| **E(3)** | 7A | **Occupancy Type** | Primary, or if checked, ☐ Secondary ☐ Investment | |
| **F** | 5D | **Balance of Down Payment** | $ | |
| | | **PURCHASE PRICE TOTAL** | $   900,000 | |

© 2021, California Association of REALTORS®, Inc.

**RPA 12/21 (PAGE 1 OF 16)**    Buyer's Initials _GB_ / __    Seller's Initials __ / __

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

Exhibit 6, Page 94

Property Address: ....., ..., ...    22596 Killy St, Lake Forest, CA 92630-4619    Date: **May 20, 2024**

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | ☐ $ ____ ( ____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: _____ |
| G(2) | | ADDITIONAL FINANCE TERMS: _____ | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or ____ ) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or ____ ) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or ____ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | Intentionally Left Blank | | |
| J | 16 | Final Verification of Condition | 5 (or ____ ) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or ____ ) Days after Acceptance | |
| L | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or ____ ) Days after Acceptance | ☐ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ ____ | 17 (or ____ ) Days after Acceptance | ☐ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or ____ ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property Buyer's right to access the Property for informational purposes is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | 17 (or ____ ) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or ____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | Contingency Removal (C.A.R. Form CR) and checking the applicable |
| L(5) | 8E, 13A | Preliminary ("Title") Report | 17 (or ____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | box therein. Removal or Waiver at time of offer is against Agent advice. |
| L(6) | 8F, 11K | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or ____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | See paragraph 8H. |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or ____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | ☐ CR attached |
| L(8) | 8J | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ ____ AM/ ____ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | Seller Occupied or Vacant units | COE date or, if checked below, ☐ ____ days after COE (29 or fewer days) ☐ ____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | | Tenant Occupied units | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or ____ ) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or ____ ) Days after receipt | |
| N(3) | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or ____ ) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or ____ ) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | Intentionally Left Blank | | |

RPA 12/21 (PAGE 2 OF 16)    Buyer's Initials  GB  / ____    Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    BK Purchase

Exhibit 6, Page 95

Property Address: ....., ..., ...    22596 Killy St, Lake Forest, CA 92630-4619    Date: 5/20/2024

| P | Items Included and Excluded |
|---|---|

**P(1)** | **9** | Items Included - All items specified in Paragraph 9B are included and the following, if checked:

☐ Stove(s), oven(s), stove/oven combo(s);
☐ Refrigerator(s);
☐ Wine Refrigerator(s);
☐ Washer(s);
☐ Dryer(s);
☐ Dishwasher(s);
☒ Microwave(s);

☐ Video doorbell(s);
☐ Security camera equipment;
☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
☐ Smart home control devices;
☐ Wall mounted brackets for video or audio equipment;

☐ Above-ground pool(s) / ☐ spa(s);
☒ Bathroom mirrors, unless excluded below;
☐ Electric car charging systems and stations;
☐ Potted trees/shrubs;

Additional Items included:
☐ _____
☐ _____ .
☐ _____ .

**P(2)** | **9** | Excluded Items:
☐ _____ ; ☐ _____ ; ☐ _____

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | Paragraph # | Item Description | Who Pays (if Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☐ Seller ☐ Both _____ <br> ☐ Provided by: | Environmental _____ <br> Other _____ |
| Q(2) | | Report | ☐ Buyer ☐ Seller ☐ Both | |
| Q(3) | | Report | ☐ Buyer ☐ Seller ☐ Both | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☒ Buyer ☐ Seller ☐ Both | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale inspections, reports | ☒ Buyer ☐ Seller ☐ Both | |
| Q(6) | 10B(2)(A) | Government Required Point of Sale corrective/remedial actions | ☒ Buyer ☐ Seller ☐ Both | |
| Q(7) | 19B | Escrow Fees | ☐ Buyer ☐ Seller ☐ Both <br> ☒ Each to pay their own fees | Escrow Holder: <br> **A & A Escrow** |
| Q(8) | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both | Title Company (If different from Escrow Holder): <br> **Lawyers Title Company** |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☒ Buyer ☐ Seller ☐ Both | |
| Q(11) | | City transfer tax, fees | ☒ Buyer ☐ Seller ☐ Both | |
| Q(12) | 11K(2) | HOA fee for preparing disclosures | Seller  Buyer | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☐ Seller ☒ Both **Split 50/50** | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both | |
| Q(16) | | fees or costs | ☐ Buyer ☐ Seller ☐ Both | |
| Q(17) | | fees or costs | ☐ Buyer ☐ Seller ☐ Both | |
| Q(18) | 10C | Home warranty plan: _____ <br> _____ | Buyer ☐ Seller ☐ Both _____ <br> Buyer waives home warranty plan <br> Issued by: | Cost not to exceed $ _____ . |

| R | OTHER TERMS: PROPERTY TO BE SOLD IN "AS-IS", "WHERE-IS" CONDITION WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESSED OR IMPLIED. PEST CONTROL/ TERMITE INSPECTION REPORT AND ANY CORRECTIVE WORK WILL NOT BE PROVIDED, COMPLETED BY NOR PAID FOR BY SELLER. TRUSTEE'S ADDENDUM TO EXCLUSIVE AND RIGHT TO SELL IS INCORPORATED HEREIN IN ITS ENTIRETY. |
|---|---|

RPA 12/21 (PAGE 3 OF 16)    Buyer's Initials _Gb_ / _____    Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    BK Purchase

Exhibit 6, Page 96

Property Address: .....,.., .. 22596 Killy St, Lake Forest, CA 92630-4619 _____ Date: __May 20, 2024__

4. **PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)
   A. **PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
      ☐ ~~Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)~~
      ☐ ~~Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)~~
      ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
      ☐ ~~Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)~~
      ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
      ☐ Other
   B. **OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
      ☐ Addendum # _____ (C.A.R. Form ADM)     ☐ ~~Short Sale Addendum (C.A.R. Form SSA)~~
      ☐ ~~Back Up Offer Addendum (C.A.R. Form BUO)~~     ☐ ~~Court Confirmation Addendum (C.A.R. Form CCA)~~
      ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
      ☐ ~~Buyer Intent to Exchange Addendum (C.A.R. Form BXA)~~ ☐ ~~Seller Intent to Exchange Addendum (C.A.R. Form SXA)~~
      ☐ Other _____     ☐ Other _____
   C. **BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)
      ☒ ~~Buyer's Investigation Advisory (C.A.R. Form BIA)~~     ☒ ~~Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)~~
      ☒ ~~Wire Fraud Advisory (C.A.R. Form WFA)~~     ☒ ~~Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)~~
      (Parties may also receive a privacy disclosure from their own Agent.)
      ☐ ~~Wildfire Disaster Advisory (C.A.R. Form WFDA)~~     ☐ ~~Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)~~
      ☐ ~~Trust Advisory (C.A.R. Form TA)~~     ☐ ~~Short Sale Information and Advisory (C.A.R. Form SSIA)~~
      ☐ ~~REO Advisory (C.A.R. Form REO)~~     ☐ ~~Probate Advisory (C.A.R. Form PA)~~
      ☐ Other _____     ☐ Other _____

5. **ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **DEPOSIT:**                                     Listing Broker's Office
      (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to ~~Escrow Holder.~~ If a method other than wire transfer is specified in **paragraph 3D(1)** ~~and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.~~
      ~~(2) INCREASED DEPOSIT: Increased deposit specified in paragraph 3D(2) is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.~~
      (3) **RETENTION OF DEPOSIT:** Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. ~~Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.~~ Buyer agrees that if they backout prior to Court Hearing or are unable to Close Escrow they forfeit the Deposit.
   B. **ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
      ~~(2) ADDITIONAL FINANCED AMOUNT: If an additional financed amount is specified in paragraph 3E(2), that amount will provide for conventional financing UNLESS Seller Financing (C.A.R. Form SFA), or Other is checked in paragraph 3E(2).~~
      (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
      (4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC shall be incorporated and Signed by all Parties. ~~Buyer shall, within the time specified in paragraph 3E(1), Deliver to Seller written notice (C.A.R. Form RR or AEA) (i) of any lender requirements that Buyer requests Seller to pay for or otherwise correct or (ii) that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing,~~ Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.
   D. **BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   E. **LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** ~~the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit,~~ and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

6. **ADDITIONAL FINANCING TERMS:**
   A. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.
   B. **VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

RPA 12/21 (PAGE 4 OF 16)     Buyer's Initials (_GB_) / _____     Seller's Initials _____ / _____     [logo]

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com     BK Purchase

Property Address: .....,.,., ,,,, 22596 Killy St, Lake Forest, CA 92630-4619    Date:  __May 20, 2024__

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**
  **A. OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.
  **B. CONDITION OF PROPERTY ON CLOSING:**
    (1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. ~~Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.~~
    (2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**
  ~~**C. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed, **(i)** the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; **(ii)** Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan; and **(iii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.~~
  ~~**D. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.~~
  ~~**E.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.~~

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**
  **A. LOAN(S):**
    ~~(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s).~~ **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
    (2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. ~~Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.~~
    (3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, ~~unless Otherwise Agreed.~~
    ~~(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.~~
    (5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller ~~may~~ be entitled to Buyer's deposit ~~or other legal remedies.~~

  **B. APPRAISAL:**
    ~~(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.~~
    (2) NO APPRAISAL CONTINGENCY: If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller ~~may~~ be entitled to Buyer's deposit ~~or other legal remedies.~~
  ~~**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12.**~~
  ~~**D. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review of Seller's documents required in **paragraph 14A.**~~

RPA 12/21 (PAGE 5 OF 16)    Buyer's Initials __GB__ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Exhibit 6, Page 98

Property Address: ....., ..., ..   22596 Killy St, Lake Forest, CA 92630-4619   Date: __May 20, 2024__

E.   TITLE:
~~(1) This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.~~
~~(2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.~~

~~F.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE): This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11K** ("CI Disclosures").~~

~~G.   BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY: Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.~~

H.   **REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

~~I.   REMOVAL OF CONTINGENCY OR CANCELLATION:~~
~~(1) For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.~~
~~(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.~~
~~(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.~~

~~J.   SALE OF BUYER'S PROPERTY: This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.~~

9.   **ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
   A.   **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.
   B.   **ITEMS INCLUDED IN SALE:**
      (1) All EXISTING fixtures and fittings that are attached to the Property;
      (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
         **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.
      (3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
      (4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
      (5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.
      (6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, ~~within the time specified in **paragraph 3N(1)**,~~ shall (i) disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** ~~or otherwise included in the sale is leased,~~ or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, ~~and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.)~~ concerning any such item.
      (7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and (ii) are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**RPA 12/21 (PAGE 6 OF 16)**   Buyer's Initials _GB_ / _____   Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   BK Purchase

Exhibit 6, Page 99

Property Address: ___, ___, ___    22596 Killy St, Lake Forest, CA 92630-4619    Date: May 20, 2024

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs 3Q(1), (2), (3), and (5) only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; ~~it does not determine who is to pay for any work recommended or identified in the Report. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).~~

**B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be ~~completed within the time specified in~~ **paragraph 3N(4)** ~~and~~ paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow ~~or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.~~

(2) ~~**POINT OF SALE REQUIREMENTS:**~~

~~**(A)** Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5)** and 3Q(6). Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall (i) directly pay to the vendor completing the repair or (ii) provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.~~

~~**(B)** Buyer shall be provided, within the time specified in **paragraph 3N(4)**, unless Parties Otherwise Agree to another time period, a Copy of any required government conducted or point of sale inspection report prepared pursuant to this Agreement in anticipation of this sale of the Property.~~

(3) ~~**REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.~~

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C. HOME WARRANTY:**

(1) Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, ~~that exceeds the amount allocated to Seller in **paragraph 3Q(18)**~~. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

~~**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**~~

~~**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**~~

~~(1) Seller shall, within the time specified in **paragraph 3N(4)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).~~

~~(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID), Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Agent.~~

~~(3) Seller shall, within the time specified in **paragraph 3N(4)**, provide "Supplemental Disclosures" as follows: (i) unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; (ii) if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.~~

~~(4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.~~

RPA 12/21 (PAGE 7 OF 16)    Buyer's Initials _GB_ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    BK Purchase

Exhibit 6, Page 100

Property Address: ......, ...,  22596 Killy St, Lake Forest, CA 92630-4619                                    Date: _____ May 20, 2024

**B. LEAD DISCLOSURES:**
~~(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").~~
~~(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.~~

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** ~~For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: (i) a home hardening disclosure required by law; and (ii) a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and (iii) a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).~~

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** ~~For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: (i) a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and (ii) an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).~~

**E. WAIVER PROHIBITED:** ~~Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.~~

**F. RETURN OF SIGNED COPIES:** ~~Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.~~

**G. TERMINATION RIGHTS:**
(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR** (ii) to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR** (iii) to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
(2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): (i) Copies of any documents required by Law (C.A.R. Form HOA-RS); (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; (v) the names and contact information of all HOAs governing the Property; (vi) pet restrictions; and (vii) smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: (i) Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

RPA 12/21 (PAGE 8 OF 16)        Buyer's Initials  _GB_ / ____        Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        BK Purchase

Exhibit 6, Page 101

Property Address: 22596 Killy St, Lake Forest, CA 92630-4619      Date: May 20, 2024

**M. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, ~~within the time specified in paragraph 3L(3),~~ have the right, at Buyer's expense ~~unless Otherwise Agreed,~~ to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:

(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

(A) A general home inspection.

(B) An inspection for lead-based paint and other lead-based paint hazards.

(C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

(D) Any other specific inspections of the physical condition of the land and improvements.

~~(2) All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.~~

~~(3) A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to paragraphs 3, 10, 11, and 14A.~~

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling though stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. ~~Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer.~~ Buyer shall, ~~(i) by the time specified in paragraph 3L(3),~~ complete Buyer Investigations and satisfy themselves as to the condition of the Property, ~~and either remove the contingency or cancel this Agreement, and (ii) by the time specified in paragraph 3L(3) or 3 Days~~ after receipt of any Investigation report, whichever is later, give Seller at no cost, complete ~~Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement.~~ This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Buyer shall, ~~within the time specified in paragraph 3N(1),~~ be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. ~~If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified.~~ The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. ~~The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.~~

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall ~~within 7 Days~~ ~~after request,~~ give Escrow Holder necessary information to clear title.

**D.** Seller shall, ~~within the time specified in paragraph 3N(1),~~ disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**RPA 12/21 (PAGE 9 OF 16)**      Buyer's Initials [DS] _GB_ / _____      Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    ■K Purchase

Exhibit 6, Page 102

Property Address: ..... .... ...    22596 Killy St, Lake Forest, CA 92630-4619    Date: May 20, 2024

G. Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. SELLER DELIVERY OF DOCUMENTS: Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 13A, and 13D.**

B. BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION

   (1) Buyer has the time specified in **paragraph 3** to: (i) perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller, signed approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

   (2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR); If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

   (3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A** or **11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

   (4) Continuation of Contingency: Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 14C(1)**.

C. SELLER RIGHT TO CANCEL:

   (1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES**: If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   (2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS**: Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2)** and **29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

   (3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES**: Seller may cancel this Agreement by good-faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

D. BUYER RIGHT TO CANCEL:

   (1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES**: If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

   (2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS**: If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Perform, may cancel this Agreement.

   (3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES**: Buyer may cancel this Agreement by good-faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

RPA 12/21 (PAGE 10 OF 16)    Buyer's Initials ⎣GB⎦ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    BK Purchase

Exhibit 6, Page 103

DocuSign Envelope ID: 7BC93EEB-34B4-47AA-8562-3D593281B525

Property Address: ...., ...   22596 Killy St, Lake Forest, CA 92630-4619   Date: May 20, 2024

~~E. NOTICE TO BUYER OR SELLER TO PERFORM: The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller, and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than 2 Days prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.~~

~~F. EFFECT OF REMOVAL OF CONTINGENCIES:~~

~~(1) REMOVAL OF BUYER CONTINGENCIES: If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.~~

~~(2) REMOVAL OF SELLER CONTINGENCIES: If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: (i) satisfied themselves regarding such contingency, (ii) elected to proceed with the transaction; and (iii) given up any right to cancel this Agreement based on such contingency.~~

~~G. DEMAND TO CLOSE ESCROW: Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: (i) be Signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 **Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than 3 **Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.~~

~~H. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less (i) fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and (ii) any escrow cancellation fee charged to that Party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.~~

~~15. REPAIRS: Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.~~

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B; (ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**

    A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, ~~or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.~~

    B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA 12/21 (PAGE 11 OF 16)        Buyer's Initials ___GB___ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        BK Purchase

Exhibit 6, Page 104

Property Address: ...... ..... ...  22596 Killy St, Lake Forest, CA 92630-4619  Date: May 20, 2024

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

B. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11**, or elsewhere in this Agreement.

C. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H**.

D. Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section**. If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

E. Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

F. Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2)**. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

G. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

~~**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A**.~~

**23. ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

A. **"Acceptance"** means the the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

RPA 12/21 (PAGE 12 OF 16)  Buyer's Initials ___ / ___  Seller's Initials ___ / ___

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com  ■K Purchase

Exhibit 6, Page 105

Property Address: ...., ..., ...       22596 Killy St, Lake Forest, CA 92630-4619      Date: **May 20, 2024**

**B.** **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**

**C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.** **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.** **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.** **"Deliver"**, **"Delivered"** or **"Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

**O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.** **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26.** **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. ~~The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. If at least one but not all Parties initial, a Counter Offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance.~~ The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**27.** **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**28.** **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

RPA 12/21 (PAGE 13 OF 16)      Buyer's Initials _GB_ / ____      Seller's Initials _____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   BK Purchase

Exhibit 6, Page 106

Property Address: ....., ..., ...    22596 Killy St, Lake Forest, CA 92630-4619    Date:    **May 20, 2024**

29. LIQUIDATED DAMAGES (By initialing in the space below, you are agreeing to Liquidated Damages):
   If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages,
   the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer
   intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess
   shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer
   and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND
   SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED
   DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).

   Buyer's Initials _____ / _____    Seller's Initials _____ / _____

30. MEDIATION:
   A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before
      resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for
      Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties.
      The Parties also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior
      to, or within a reasonable time after, the dispute or claim is presented to the Agent. Mediation fees, if any, shall be divided
      equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute
      or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through
      mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not
      be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION
      PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   B. ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B;
      (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under
      paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply
      even if the Arbitration of Disputes paragraph is not initialed.

31. ARBITRATION OF DISPUTES:
   A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any
      resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The
      Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior
      to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be
      conducted through any arbitration provider or service mutually agreed to by the Parties, OR ☐ _____
      _____. The arbitrator shall be a retired judge or justice, or an attorney with
      at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator.
      Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by
      the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any
      language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance
      with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the
      Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having
      jurisdiction.
   B. EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the
      jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-
      judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale
      contract as defined in Civil Code § 2985.
   C. PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and
      arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action
      to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other
      provisional remedies; or (iii) the filing of a mechanic's lien.
   D. AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing.
      Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
   E. "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING
      OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY
      NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS
      YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING
      IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL,
      UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES'
      PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU
      MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL
      PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

      "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING
      OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL
      ARBITRATION."

      Buyer's Initials _____ / _____    Seller's Initials _____ / _____

RPA 12/21 (PAGE 14 OF 16)    Buyer's Initials ⌐DS⌐ [ GB ] / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    BK Purchase

Exhibit 6, Page 107

Property Address: ....., ...,  ...    22596 Killy St, Lake Forest, CA 92630-4619    Date: May 20, 2024

**32. BUYER'S OFFER**

~~A. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in paragraph 3C, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. Seller has no obligation to respond to an offer made.~~

B. ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
 (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
 (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.
 (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.
 (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____.

C. The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D. **BUYER SIGNATURE(S):** ~~Signed by:~~

(Signature) By, *George Barr*    Date: 5/20/2024
Printed name of BUYER ~~B341F...~~    **GBKD Inc.**
☐ Printed Name of Legally Authorized Signer: George Barr    Title, if applicable, cro

(Signature) By, _____    Date: _____
Printed name of BUYER: _____
☐ Printed name of Legally Authorized Signer: _____    Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

A. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.
 **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.
 ~~☐ Seller Counter Offer (C.A.R. Form CCO or SMCO)~~
 ~~☐ Back-Up Offer Addendum (C.A.R. Form BUO)~~

B. ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
 (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
 (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.
 (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.
 (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____.

C. The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D. **SELLER SIGNATURE(S):**

(Signature) By, _____    Date: _____
Printed name of SELLER: **Weneta M.A. Kosmala, Ch 7 Trustee**
☐ Printed Name of Legally Authorized Signer: _____    Title, if applicable, _____

(Signature) By, _____    Date: _____
Printed name of SELLER: _____
☐ Printed Name of Legally Authorized Signer: _____    Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

| OFFER NOT ACCEPTED: _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date) |
| Seller's Initials |

**RPA 12/21 (PAGE 15 OF 16)**    Buyer's Initials [ GB ] / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    BK Purchase

Property Address: ....., ..., ...                                                    Date: _____

22596 Killy St, Lake Forest, CA 92630-4619                          May 20, 2024

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   **A.** Buyer's Brokerage Firm _____ Lic. # _____
     By _____ Lic. # _____ Date _____
     By _____ Lic. # _____ Date _____
     ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
     ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

     **Designated Electronic Delivery Address(es):**

      Email _____ Text # _____
      Alternate: _____
      ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
     Address _____ City _____ State _____ Zip _____

   **B.** Seller's Brokerage Firm ___**Berkshire Hathaway HomeServices CA Properties**___ Lic. # __01317331__
     By _____**Clarence Yoshikane**__ Lic. # __00801398__ Date _____
     By _____ Lic. # _____ Date _____
     ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
     ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

     **Designated Electronic Delivery Address(es)** (To be filled out by Seller's Agent):
     Email __J_Toyama@verizon.net__ Text # __714.501.7132__
     Alternate: _____
     ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
     Address _____ City _____ State _____ Zip _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
       Agent or Seller Initials

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

RPA 12/21 (PAGE 16 of 16)     Buyer's Initials __GB__ / _____    Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   BK Purchase

## ADDENDUM TO PURCHASE AGREEMENT

This Addendum to Purchase Agreement ("Purchase Agreement") is entered into by and between **GBKD Inc.** and/or assignee ("Buyer") and **Weneta M.A. Kosmala**, as Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of **Stacy Odine Corban, Case No. 8:23-bk-11139-TA**, pursuant to the following terms and conditions:

## RECITALS

**WHEREAS:** On June 2, 2023, **Stacy Odine Corban** ("Debtor") filed a voluntary Chapter 13 bankruptcy petition, commencing case no. **8:23-bk-11139-TA** ("Case") in the United States Bankruptcy Court, Central District of California.  The Case was converted to one under Chapter 7 on August 28, 2023, and Weneta M.A. Kosmala was appointed Chapter 7 trustee.

**WHEREAS:** As a result of Debtor's bankruptcy filing, Weneta M.A. Kosmala was appointed as Chapter 7 Trustee and is the representative of the Estate charged with the disposition of property of the Estate ("Seller").

**WHEREAS:** On June 16, 2023, Debtor filed her schedules and statement of financial affairs (collectively, "Schedules"). On Schedule A/B, Debtor listed the real property located at **22596 Killy Street, Lake Forest, California 92630** ("Property").

**WHEREAS:** Buyer has made an offer for the Property.

**WHEREAS:** Any sale of the Property is subject to certain terms and conditions imposed by the Bankruptcy Code and ancillary procedures, and any sale requires an Order of the Bankruptcy Court.

## NOW THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:
## CONDITIONS OF SALE

1. **Offer:** Buyer and Seller have agreed to move forward with the sale of the Property as proposed in the accompanying Purchase Agreement, as amended and supplemented by this Addendum. The Purchase Agreement and this Addendum shall be considered together as one Agreement, referred to hereinafter as "Agreement." In the case of a conflict between the terms of the Purchase Agreement and this Addendum, this Addendum shall govern.

2. **Court Approval:** The sale of the Property is contingent upon approval by the Bankruptcy Court. Seller, on behalf of the Estate, agrees to proceed in good faith to obtain Court approval for the sale of the Property upon the terms and conditions set forth in the Agreement, within a reasonable period of time.

1

DocuSign Envelope ID: 7BC93EEB-34B4-47EA-8662-3D593281A525

3. **Broker's Compensation:** Brokers and agents are entitled to compensation only upon recordation of a deed or other evidence of title.

4. **No Assignment:** Authority to sell property in bankruptcy is personal. The Agreement is between Buyer and Seller only. Buyer shall have no right to assign the Escrow or the Agreement, or to transfer the Property concurrent with closing, without consent of Seller and without Court approval.

5. **Title Insurance:** The title insurance policy shall be subject only to liens, encumbrances, clouds and other matters as may appear on the preliminary title report, that are not to be removed at the close of Escrow, and have not been objected to by Buyer. Should Seller be unwilling or unable to eliminate those title matters disapproved by Buyer as above, Seller may terminate the Agreement; or, should Seller fail to deliver good and marketable title as provided above, Seller or Buyer may terminate the Agreement mutually. In either case, Buyer's deposit shall be returned to Buyer, and Buyer shall have no further recourse against Seller, Weneta M.A. Kosmala, as Bankruptcy Trustee or individually; the  Trustee's law firm, Law Offices of Weneta M.A. Kosmala; Seller's attorney, Golden Goodrich LLP; the bankruptcy estate of Stacy Odine Corban, **Case No. 8:23-bk-11139-TA**; Debtor; or Seller's agents or brokers, including Clarence Yoshikane of Berkshire Hathaway HomeServices California Properties.

6. **Limitations of Sale**: The parties acknowledge that the operation of the law has placed the Bankruptcy Trustee in a unique role as Seller of the Property which is the subject of the Agreement. Due to the nature of the Trustee's role in administering the Estate, there are limitations as to the extent, type and character of the agreement under which the Trustee can convey the Property. The sale of the Property is subject to certain limitations. The parties hereby acknowledge that they understand that the terms under which this Property is to be conveyed may vary substantially from the normal customs and trade within the real estate industry. Except where expressly mandated by operation of law, Buyer consents to any such modifications and amendments.

7. **Purchase without Warranties:** Buyer acknowledges that Buyer is purchasing the Property from Seller "AS IS, WHERE IS" without warranties of any kind, expressed or implied, being given by Seller, concerning the condition of the Property or the quality of the title thereto, or any other matters relating to the Property. Buyer represents and warrants that Buyer is purchasing the Property as a result of Buyer's own investigation and is not buying the Property pursuant to any representation made by Seller, or by any broker, agent, accountant, attorney or employee acting at the direction, or on behalf of, Seller. Buyer acknowledges that Buyer has inspected the Property, and upon closing of Escrow governed by this Agreement, Buyer forever waives, for itself, its heirs, successors and assigns, any and all claims of any kind against Seller, as Bankruptcy Trustee or individually; the Trustee's law firm, Law Offices of Weneta M.A. Kosmala; Seller's attorneys, Golden Goodrich LLP; the Estate; Debtor; Seller's agents or brokers, including Clarence Yoshikane of Berkshire Hathaway HomeServices California Properties; or any other agent, broker or attorney involved in this transaction; arising or which might arise in the future concerning the Property.

2

Exhibit 6, Page 111

8. **Trustee's Liability:** Buyer acknowledges that in selling the Property, Seller is acting in her official capacity only. No personal liability shall be sought or enforced against Seller with regard to the Agreement, the sale of the Property, or the physical condition of the Property. In the event Seller fails or refuses to complete the transaction for any reason, the limit of Seller's liability is the return of any money paid to Seller by Buyer, without deduction. Prior to and after the closing of escrow, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Property and the Agreement, and all disputes arising before and after closing shall be resolved in said Court.

9. **Hold Harmless:**

(a) Buyer understands the terms and conditions of the entire Agreement, and holds harmless Seller, the Estate, and the attorneys, realtors, brokers, agents, and/or employees of Seller and/or the Estate, from any liabilities arising from this Agreement.

(b) All parties hereto further agree, jointly and severally, to pay on demand as well as to indemnify and hold Escrow harmless from and against all costs, damages, judgments, attorneys' fees, expenses, obligations and liabilities of any kind or nature which in good faith, Escrow may incur or sustain in connection with or arising out of this Escrow and Escrow is hereby given a lien upon all the rights, titles and interest of each of the undersigned in all escrow papers and other property and monies deposited in this escrow, to protect the rights of escrow and to indemnify and reimburse Escrow under this Agreement. In the event this Escrow is not completed for any reason, Escrow is authorized to deduct and pay its fee, plus costs incurred from any funds on deposit.

10. Any and all disputes, which involve in any manner the Bankruptcy Estate or Weneta M.A. Kosmala, arising from the Purchase Agreement, this Addendum, or relating in any manner to the Property, shall be resolved only in the United States Bankruptcy Court, Central District of California, Santa Ana Division.

11. Seller will not provide a pest control report nor pay for any corrective work; nor shall Buyer receive any credit for corrective work.

12. Buyer is aware that the Agreement is subject to overbid upon such terms and conditions as Seller shall propose and the Bankruptcy Court shall approve; and that the Agreement is contingent upon approval by the Bankruptcy Court.

13. Buyer has **NO CONTINGENCIES** in this transaction, including but not limited to the contingency of obtaining financing and appraisal, inspections, etc. Buyer is responsible for conducting whatever inspections or appraisals or obtaining whatever approvals Buyer needs to complete the transaction, prior to entering into this Agreement.

Exhibit 6, Page 112

**The deposit is refundable only if the Bankruptcy Court accepts an overbid, or refuses to approve the Agreement for reasons not attributable to Buyer.**

14. In addition to the **$50,000** cashier's check (deposited with the Bankruptcy Trustee) as set forth in the Purchase Agreement, Buyer will deposit the balance of the purchase price provided for in the Purchase Agreement, into escrow on or before the close of escrow.

**I/we, Buyer herein, have reviewed the Purchase Agreement and this Addendum, understand the terms and conditions set forth herein, and further agree to purchase the Property pursuant to said terms and conditions.**

Dated: ___May 20__, 2024

_____
_George Barr_
_GBKD Inc._, Buyer

Dated: _____, 2024

_____
_____, Buyer

**I, Seller, agree to sell the Subject Property pursuant to the terms and conditions set forth herein.**

**Weneta M.A. Kosmala, in her sole capacity as Bankruptcy Trustee of the Estate of Stacy Odine Corban, Case No. 8:23-bk-11139-TA, and not in her individual capacity or as the principal of the Law Offices of Weneta M.A. Kosmala.**

Dated: _____, 2024

_____
Weneta M.A. Kosmala, Chapter 7 Trustee

SO AGREED,

Date:

_____
Clarence Yoshikane, Trustee's Agent
BRE # 00801398

714.606.5765, Direct Line
Clarence.Yoshikane@gmail.com

Date:

_____
**Clarence Yoshikane**, Buyer's Agent

4

Exhibit 6, Page 113

DocuSign Envelope ID: 7BC99EEB-34B4-474A-8662-3D693282J525



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No.** *One*

**(C.A.R. Form ADM, Revised 12/21)**

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated _____ **May 20, 2024** _____, on property known as _____ **22596 Killy Street, Lake Forest, CA 92630** _____
_____ ("Property/Premises"),
in which _____ **GBKD Inc.** _____ is referred to as ("Buyer/Tenant")
and _____ **Weneta M.A. Kosmala, Ch 7.Trustee** _____ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

*Minimum Initial Overbid to be at Least $5,000 with Subsequent Overbids to be $1,000 or an Amount Acceptable to the Trustee. Overbidder to match all terms and conditions of original bid. If a successful Overbidder is accepted and confirmed by the Court, then the successful Overbidder is to reimburse the Original Bidder up to: $1,000 costs incurred. Only Physical Inspection, Termite Inspection, and Loan Appraisal are Reimbursable Expenses. Aforementioned Costs incurred to be collected by Escrow. Proof of monies spent to be given to Overbidder along with Inspection Reports.*

*Buyer Acknowledges that the Trustee is a Fiduciary and is Obligated to obtain the best transaction for the estate. Trustee may Terminate this Agreement if he has a better transaction. If a motion to sell has been filed the Trustee may recommend acceptance of another offer. Buyer Acknowledges that Trustee is signing this agreement so the Buyer can start the process to obtain Loan Approval. So the Buyer is prepared to Bid in the Event there is an Auction. Buyer Acknowledges that the Trustee may Terminate this agreement and accept another offer if it is a better offer.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant  *George Barr*  George Barr        GBKD Inc.        Date  5/20/2024

Buyer/Tenant _____  Date _____

Seller/Landlord _____  Date _____
          ... **Weneta M.A. Kosmala, Ch 7 Trustee**

Seller/Landlord _____  Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**ADM REVISED 12/21 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Exhibit 6, Page 114

DocuSign Envelope ID: 7BC92EFB-34B4-47CA-8662-3D693283J625

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

### SELLER'S AGENT
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### BUYER'S AGENT
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### AGENT REPRESENTING BOTH SELLER AND BUYER
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

### SELLER AND BUYER RESPONSIBILITIES
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

| | | |
|---|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _George Barr_ GBKD Inc. | George Barr | Date 5/20/2024 |
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | | Date |

Agent **Berkshire Hathaway HomeServices California Properties**    DRE Lic. # _01317331_
                                          Real Estate Broker (Firm)
By _____ **Clarence Yoshikane** DRE Lic. # _00801398_    Date _____
       (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**

### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660    Phone: (555)555-5555    Fax: 9496407429    Bankruptcy
Jennifer Toyama      Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Exhibit 6, Page 115

2079.13. As used in Sections 2079.7 and 2079.14, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**AD REVISED 12/21 (PAGE 2 OF 2)**



## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    1-4-1

Exhibit 6, Page 116

DocuSign Envelope ID: 7BC93EEB-34B4-474A-8662-3D693282I525



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

BERKSHIRE HATHAWAY HOMESERVICES | CALIFORNIA PROPERTIES

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _George Barr_ _____ George Barr _____ Date _5/20/2024_
FFBE6A0651B341F... GBKD Inc.

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

EQUAL HOUSING OPPORTUNITY

**CCPA REVISED 12/22 (PAGE 1 OF 1)**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660    Phone: (555)555-5555    Fax: 9496407429    Bankruptcy
Jennifer Toyama    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

Exhibit 6, Page 117



DocuSign Envelope ID: 7BC93EEB-34B4-47AA-8662-3D993281E525



CALIFORNIA
ASSOCIATION
OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ Date _____
Seller _____ Date _____
Buyer _George Barr_____ George Barr _____ Date _5/20/2024_
Buyer _FFBE6A0651B341F...__ GBKD Inc. _____ Date _____

Buyer's Brokerage Firm *Berkshire Hathaway HomeServices California Properties*  DRE Lic # _01317331_  Date _____
By _____ DRE Lic # _00801398_  Date _____
*Clarence Yoshikane*

Seller's Brokerage Firm *Berkshire Hathaway HomeServices California Properties*  DRE Lic # _01317331_  Date _____
By _____ DRE Lic # _00801398_  Date _____
*Clarence Yoshikane*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

R E B S   Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

EQUAL HOUSING OPPORTUNITY

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660    Phone: (949)555-5555    Fax: 9496407429    Bankruptcy
Jennifer Toyama    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com

Exhibit 6, Page 118

# Exhibit 7



**ESCROW SERVICES, INC.**

15250 Ventura Blvd, Suite 715
Sherman Oaks, CA 91403

Phone: (310) 550-6055
Fax: (310) 550-6130

### SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 22596 Killy Street<br>Lake Forest, CA 92630 | **DATE:** | June 11, 2024 |
| **SELLER:** | Daniel W. Corban and Stacy Odine<br>Corban | **CLOSING DATE:**<br>**ESCROW NO.:** | 000013-AA |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 900,000.00 |
| | | |
| **PAYOFF CHARGES - Bank of America (#7)** | | |
| **[Total Payoff $402,349.38]** | | |
| Outstanding balance from proof of claim | 402,349.38 | |
| | | |
| **PAYOFF CHARGES - US Dept of HUD (#8)** | | |
| **[Total Payoff $103,630.40]** | | |
| Outstanding balance as of June 6, 2024 | 103,630.40 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| 1st Half Taxes 2024-2025 (Estimated) at $2,769.22/semi-annually<br>from 07/01/2024 to 08/29/2024 | 892.30 | |
| HOA Dues at $84.00/monthly from 08/29/2024 to 09/01/2024 | | 5.60 |
| | | |
| **COMMISSION CHARGES** | | |
| Berkshire Hathaway Home Services California Properties | 18,000.00 | |
| Berkshire Hathaway Home Services California Properties | 18,000.00 | |
| | | |
| **H.O.A./MANAGEMENT** | | |
| Transfer Fee 50/50 Split (Estimated) to | 225.00 | |
| Original filed Outstanding balance due to Lake Forest II Master<br>Association | 21,648.00 | |
| HOA Dues from Nov.2022 to August 2024 to Lake Forest II Master<br>Association | 1,848.00 | |
| Late Fees ($10 each) to Lake Forest II Master Association | 220.00 | |
| Move Out Fee IF ANY to | 200.00 | |
| Document Fee(s) IF ANY to | 350.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| TBD for NHD Report | 74.95 | |
| Clarence Yoshikane (Maximum) reimbursements | 15,000.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - Lawyers Title**<br>**Company** | | |
| Title - Owner's Title Insurance | 2,229.00 | |
| Title - Wire Fee | 50.00 | |
| Title - Messenger Fee | 75.00 | |
| Title - Sub Escrow Fee | 65.00 | |
| Recording Quitclaim Deed from Seller to Buyer | 55.00 | |

Date:  June 11, 2024                                          Escrow No.:  000013-AA

Page 2 of 2:

|  | DEBITS | CREDITS |
|---|---|---|
| Recording Quitclaim Deed by Stacy Corban | 55.00 |  |
| Recording Order Authorizing sale | 135.00 |  |
| Recording Release of HOA lien | 75.00 |  |
| Recording Release of Judgment | 75.00 |  |
| Miscellaneous Recording Fees | 75.00 |  |
| SB2 Recording Fees | 225.00 |  |
| Transfer Tax - County to Orange County | 990.00 |  |
| 2nd Half Taxes 2023-2024 POC (S*) $2,769.22 |  |  |
|  |  |  |
| **ESCROW CHARGES - A & A Escrow Services, Inc.** |  |  |
| Title - Escrow Fee | 1,650.00 |  |
| Title - 1099 Processing Fee | 75.00 |  |
| Title - Drawing Documentation Fee | 50.00 |  |
| Title - Messenger/Overnight Fees | 75.00 |  |
| Title - Wire Fee IF ANY | 50.00 |  |
| Title - Traveling Notary (if needed) | 150.00 |  |
| Title - File Archive Fee* | 50.00 |  |
|  |  |  |
| **Net Proceeds** | 311,363.57 |  |
|  |  |  |
| **TOTAL** | $  900,005.60 | $  900,005.60 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

_____
Daniel W. Corban

_____
Stacy Odine Corban

Exhibit 7, Page 120

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3070 Bristol Street, Suite 640, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*):  **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); AND (4) AUTHORIZING PAYMENT OF UNDISPUTED LIENS, REAL ESTATE BROKER'S COMMISSIONS AND OTHER ORDINARY COSTS OF SALE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF WENETA M.A. KOSMALA, CLARENCE YOSHIKANE AND GEORGE BARR IN SUPPORT [22596 KILLY STREET, LAKE FOREST, CALIFORNIA 92630, APN 614-202-48]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **June 14, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) **June 14, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 14, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 14, 2024 | David M. Fitzgerald | *David M. Fitzgerald* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Ryan W Beall    rbeall@go2.law,
kadele@go2.law;dfitzgerald@go2.law;rbeall@ecf.courtdrive.com;cmeeker@go2.law
Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
Benjamin Heston    bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
Weneta M.A. Kosmala (TR)    ecf.alert+Kosmala@titlexi.com,
wkosmala@txitrustee.com;dmf@txitrustee.com;sdk@txitrustee.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**SERVED BY UNITED STATES MAIL:**

~~Stacy Odine Corban~~
~~22596 Killy St~~
~~Lake Forest, CA 92630-4619~~
~~DEBTOR~~
MAIL RETURNED 2/27/24 UTF

GBKD Inc.
George Earl Barr Jr.
26840 Aliso Viejo Pkwy #120
Aliso Viejo, CA 92656

Bank of America, N.A.
c/o Carrington Mortgage Services, LLC
1600 South Douglass Road
Anaheim, CA 92806

Bank of America, N.A.
c/o Josephine E. Salmon, Esq.
Aldridge Pite, LLP
8880 Rio San Diego Drive, Suite 725
San Diego, CA 92108

Bank of America, N.A.
Attn:  President
100 N Tryon St
Charlotte, NC 28202

Bank of America, N.A.
c/o CT Corporation System
Agent for Service
Amanda Garcia
330 N Brand Blvd., Suite 700
Glendale, CA 91203

U.S. Department of Housing
and Urban Development
1 Sansome Street, 12th Floor
San Francisco, CA 94104

U.S. Department of Housing
and Urban Development
c/o Ruth Ann Lambert
Default Specialist
ISN Corporation
2000 N. Classen Blvd., Suite 3200
Oklahoma City, OK 73106

The Associate General Counsel for Litigation
Office of Litigation
U.S. Department of Housing
and Urban Development
451 Seventh Street, S.W.
Washington, D.C. 20410

Lake Forest II Master
Homeowners Association
Attn:  Collections Administrator
24752 Toledo Way
Lake Forest, CA 92630

Lake Forest II Master
Homeowners Association
c/o Corey L. Todd, Esq.
Tinnelly Law Group
27101 Puerta Real, Suite 250
Mission Viejo, CA 92691

County of Orange
Attn: Treasurer-Tax Collector
P.O. Box 1438
Santa Ana, CA 92702-1438

**SERVED BY EMAIL:**
Clarence.Yoshikane@gmail.com
j_toyama@verizon.net
antonia@aaescrow.com (Antonia Delgado at A & A Escrow)
kevinsayles@ltic.com (Kevin Sayles at Lawyers Title)
vanessia.martinez@LTIC.com (Vanessia Martinez at Lawyers Title)
jsalmon@aldridgepite.com (Josephine E. Salmon at Aldridge Pite
Abigail.F.Greenspan@hud.gov
PCLegal@hud.gov